### GRAY et al. v. BLAU.
### No. 4580.

Court of Civil Appeals of Texas. Beaumont.
March 31, 1949.

Rehearing Denied Sept. 28, 1949.

Baker, Vaughan & Black, Pt. Arthur, for appellants.

Lefler, Walker & Walley, Beaumont, J. R. McDaugald, Beaumont, for appellee.

R. L. MURRAY, Justice.

This is a suit on a written contract by Blau, appellee, against Gray and Buie, appellants, whereby Blau sought to be paid certain sums of money alleged to be due him under the terms of the contract. Gray and Buie were partners, operating as Industrial Welding & Machine Works, and with the aid of Blau, secured a contract with Nederland Independent School District to erect a football stadium on a cost-plus basis. Immediately after such contract was signed, the appellants and appellee entered into the following contract:

"The State of Texas:

"County of Jefferson:

"This agreement, made and entered into by and between W. L. Gray, T. B. Buie and R. E. Blau each and all of the County of Jefferson, State of Texas, for and in consideration of the agreements of each of the other parties hereto, do hereby covenant and agree as follows:

"(1) It is stipulated and agreed by and between the parties hereto that this agreement is made and entered into by them for the express purpose of constructing a stadium for the Nederland Independent School District, Nederland, Jefferson County, Texas.

"(2) It is agreed by and between the parties to this agreement that the Industrial Welding & Machine Works, with offices located at 3224—16th Street in Port Arthur, Jefferson County, Texas, a company owned and operated by (Co-partners) W. L. Gray and T. B. Buie, is to act as the General Contractor on the construction work above set out for the Nederland Independent School District of Nederland, Jefferson County, Texas, under the drawings, plans and specifications set out in drawings numbered and dated as follows: Drawing No. 1 of 16 issued 4-27-47; Drawings Nos. 2-3-4-5-6 and 7 of 16 issued 6-19-47; Drawing No. 8 of 16 issued 6-23-47; Drawings Nos. 9-10-11-12 and 15 of 16 issued 6-27-47; Drawings Nos. 13 and 14 of 16 issued 6-26-47, and Drawing No. 16 of 16 issued 7-1-47, submitted by Maurice E. Walmer, Architect for said Nederland Independent School District, Nederland, Jefferson County, Texas on the above mentioned project.

"(3) It is further agreed by and between the parties hereto, that the said T. B. Buie is to be retained upon the cost-plus payroll of the above named project, and shall act as general construction superintendent upon said project, provided that all assignments given him are performed in such a manner that they meet the obligations of the contract.

"(4) *It is further agreed by and between the parties hereto, that the said R. E. Blau is to be retained under this agreement in the capacity of Consulting Engineer by the General Contractor, Industrial Welding & Machine Works, and in this capacity he shall be responsible to the General Contractor for such work as he may perform or supervise; It is agreed by and between the parties hereto that it shall be the duty of the said R. E. Blau to supervise all engineering work, detailing and coordination; it is further agreed that he shall be responsible for checking all administrative accounts, miscellaneous expenditures and all labor and material costs, and further that he shall be responsible for assisting in the preparation and checking of all records required by the owner or architect pertaining to the progress of the work upon the project outlined above.*

"(5) It is further agreed by and between the parties hereto, that should the above mentioned parties, either T. B. Buie or R. E. Blau, fail or neglect to perform any or all of the duties assigned to them personally, then, in that event, the services of such party to this agreement, failing or neglecting to perform his duties in a satis-

factory manner may be terminated immediately.

"(6) It is further agreed by and between the parties hereto, that should each or all of the parties hereto perform his or their assignments to the satisfaction of the owner and the architect, then such party or parties in question must be retained by the above mentioned General Contractor, the owner and the architect upon this particular project until the completion of the same.

"(7) It is further stipulated and agreed by and between the parties hereto, that since this contract referred to above was let on a cost-plus Ten (10%) per cent basis, that the gross fees accumulated through the general contract, or for any other work obtained or performed in relation thereto, shall be divided in the following proportions between the parties to this agreement; T. B. Buie and W. L. Gray shall receive as their joint share of the gross fees accumulated under the general contract the sum of Five (5%) per cent of such gross fees, and R. E. Blau shall receive as his share of the gross fees accumulated under this contract the sum of Five (5%) per cent of such gross fees.

"(8) It is further stipulated and agreed by and between the parties to this agreement that the services of the said R. E. Blau shall be and remain personal between himself and the General Contractor, Industrial Welding & Machine Works, and the right to make substitutions to perform such services as are assigned to the said R. E. Blau, under paragraph No. Four (4) of this agreement, shall rest solely with the General Contractor, Industrial Welding & Machine Works.

"(9) It is further stipulated and agreed by and between the parties hereto, that in the event that the said R. E. Blau shall for any reason become unable to personally perform the duties assigned to him under paragraph No. Four (4) of this agreement, that he, the said R. E. Blau, will terminate his services with the General Contractor, Industrial Welding & Machine Works, cancel this agreement as to him personally, and will accept as payment in full for his services to date of such ter-

mination the amount set out in paragraph No. Ten (10) below.

"(10) It is further stipulated and agreed by and between the parties hereto, that should the services of the said R. E. Blau be terminated for the reasons set out in paragraph No. Nine (9) above, then, and in that event, the said R. E. Blau agreed that he will accept as payment in full for his services to date of such termination the sum of Five (5%) per cent of the total gross fees accumulated under the general contract up to the date of such termination of his services, such amount to also include Five (5%) per cent of the contractor's fees which are being held back by the Nederland Independent School District; and it is further agreed by the said R. E. Blau that any payments of fees made to him under this agreement as his share up to the time of the termination of his services shall be deducted from the total amount of fees due him under the general contract and this agreement.

"(11) It is further stipulated and agreed by and between the parties hereto that in the event that it becomes necessary to enforce the provisions of paragraph No. Nine (9) above by making substitutions to perform the duties assigned to the said R. E. Blau, that paragraph No. Six (6) of this agreement shall be cancelled as to the said R. E. Blau under these conditions.

"(12) It is further stipulated and agreed by and between the parties hereto that in the event that the said R. E. Blau shall terminate his services with the General Contractor, Industrial Welding & Machine Works, as set out in paragraph No. Nine (9) above, then and in that event, paragraph No. Seven (7) of this agreement shall, under these circumstances, be limited to the amount of fees set out in paragraph No. Ten (10) of this agreement as to the fees which are to be paid to the said R. E. Blau for his services up to the date of such termination.

"(13) It is further stipulated and agreed by and between the parties hereto that upon the completion of the project set out in the general contract with the Nederland Independent School District, Nederland,

Jefferson County, Texas, and for which this contract and agreement was made and entered into by the parties thereto, that this agreement shall become and be void as to each and all of the parties thereto and shall be cancelled by all of the parties thereto upon the completion of the project above named.

"In witness whereof, the parties to this agreement have hereunto set their hands this 11 day of August, A.D., 1947.

"(Signed)  T. B. Buie
"    "    W. L. Gray
"    "    R. E. Blau

"Endorsed on Back: Agreement Stadium Contract

"Nederland Independent School Dist., Nederland, Texas".

Appellee alleged the making of the two contracts and that the Nederland Independent School District had paid some money to and was withholding some money due appellants, and that one-half of such sums should be paid to him. The school district was made a defendant and paid the money it was withholding into the registry of the Court. It is not a party to this appeal. Appellee did not allege that he had done anything in performance of the contract, but no exception was made to this and testimony was received in regard to what he did for appellants under the contract.

Appellants pleaded that Blau was not registered with the State Board of Registration for Professional Engineers, and had never applied for such registration, and that Blau therefore was without capacity to contract as an engineer and the contract was void; that the contract was in violation of law as being for professional engineering services by one not registered nor exempt from registration as a professional engineer.

The appellee admitted while testifying that he was not a registered professional engineer and had not applied for such registration. He pleaded estoppel, alleging that appellants were estopped to assert the claimed illegality of the contract since they had received all the benefits of his services under the contract.

A large amount of testimony was taken on trial. From it it is noted that as the construction of the stadium progressed Mr. Buie was on the cost-plus payroll, and Mr. Blau was on the payroll as an employee for which he was paid $70.00 per week. Blau was paid, in addition to such $70.00 per week, his one-half of the ten per cent fees received by Buie and Gray, the appellants, from Nederland Independent School District through the first nine weeks of construction. At that time, October 10, 1947, Mr. Buie told Mr. Blau that his services would no longer be needed. After the ninth week Mr. Blau was not paid anything more by Buie and Gray, the appellants, either in the way of his $70.00 a week salary or his one-half of the fees. paid or due to be paid by the School District. Blau did nothing further on the construction job after the ninth week. The School District had employed an architect, Mr. Walmer, to prepare plans and specifications for the construction job and to supervise the job for the School District.

The appellants filed their motion for instructed verdict at the conclusion of testimony in behalf of the appellee and also filed another motion for instructed verdict at the conclusion of all the testimony, and filed a motion for judgment non obstante veredicto after the jury's verdict was received, all of which motions were overruled by the trial court. The court submitted the case to the jury in a charge which contained five special issues. The charge defined the term "Professional Engineer" and "Professional Engineering" in the language of the statute, Article 3271a, Vernon's Annotated Civil Statutes. In response to the issues submitted in the court's charge the jury by its verdict found that (1) Blau on and after October 10, 1947, stood ready, able and willing to perform his contract with Gray and Buie; (2) that the discharge of Blau by Industrial Welding & Machine Works on the ninth payroll period did not constitute a termination of his relation with Gray and Buie under the contract between the parties; (3) that Blau was not to be paid one-half of the net fees earned by Industrial Welding &

Machine Works solely for services performed by him as a Professional Engineer; (4) that Blau, under his contract with Gray and Buie, was not required to perform the work of a professional engineer; (5) that the engineer for the Nederland Independent School District did not order termination of the contract between Blau and the appellants Buie and Gray. On the jury's verdict the court entered judgment for the sum of $1509.21 in favor of appellee Blau.

After their motion for new trial was overruled, appellants perfected their appeal to this court. Their brief presents the following points of error: Number 1 reads as follows: "The trial court erred in failing to require appellee R. E. Blau to both plead and prove his qualifications as an engineer"; Number 2, "the trial court erred in admitting parol testimony of the witness, R. E. Blau to vary the terms of the written contract upon which the suit was based, because the contract was unambiguous"; Number 3, "The trial court erred in overruling defendant's motion for instructed verdict."

■ Appellants' point No. 2 is discussed first. Upon the trial, while appellee Blau was testifying in regard to the performance of the construction contract, he was asked by his counsel "What were your duties?" He answered at some length as to some of the things that he did. When he completed his answer counsel for appellants made the following objection: "At this time we want to object to this testimony if it concerns the contract offered in evidence by the plaintiff himself. If that is what he is talking about in his remarks from the witness stand, we object to any testimony concerning the written contract because it speaks for itself. He put it in the evidence. He is bound by it." Counsel for appellee stated: "I am asking what he did under the contract." The court overruled the objection and no further objection was made by appellants to such testimony in regard to what was done by Blau. Obviously the testimony objected was not "concerning the provisions of the written contract itself," but it concerned only what the witness did. This point presents no error and is overruled.

■ Points Nos. 1 and 3 will be discussed together since they are concerned with the same question. The appellants by their pleading and by their motion for instructed verdict and motion for judgment non obstante veredicto, and motion for new trial squarely presented to the trial court the question of construing paragraph four (4) of the contract sued upon in connection with the statute in regard to registration of professional engineers. The contract was introduced in evidence by the appellee and is set out above. The relevant portions of the statute, Article 3271a, Vernon's Annotated Civil Statutes, are as follows:

"TITLE 52A

"ENGINEERS

"Art. 3271a. Registration of professional engineers.

"Section 1. That in order to safeguard life, health, and property, any person practicing or offering to practice the profession of engineering as hereinafter defined shall hereafter be required to submit evidence that he is qualified so to practice and shall be registered as hereinafter provided; and it shall be unlawful for any person to practice or offer to practice the profession of engineering in this State, or to use in connection with his name or otherwise assume, use or advertise any title or description tending to convey the impression that he is a professional engineer unless such person has been duly registered or exempted under the provisions of this Act.

"Definitions

"Sec. 2. The term professional engineer as used in this Act shall mean a person who, by reason of his knowledge of mathematics, the physical sciences, and the principles of engineering, acquired by professional education and practical experience, is qualified to engage in engineering practice as hereinafter defined.

"The practice of professional engineering within the meaning and intent of this Act includes any professional service, such as consultation, investigation, evaluation, planning, designing, or responsible supervision of construction in connection with any public or private utilities, structures,

buildings, machines, equipment, processes, works, or projects, wherein the public welfare, or the safeguarding of life, health, or property is concerned or involved, when such professional service requires the application of engineering principles and interpretation of engineering data.

\* \* \* \* \* \* \*

"Exemptions

"Sec. 20. The following persons shall be exempt from the provisions of this Act, to-wit:

\* \* \* \* \* \* \*

"(c) An employee or a subordinate of a person holding a certificate of registration under this Act, or any employee of a person exempted from registration by classes (a) and (b) of this section; provided, his practice does not include responsible charge of design *or supervision.*

\* \* \* \* \* \* \*

"Violations and Penalties

"Sec. 23. On or after the first day of January, 1938, any person who shall practice, or offer to practice, the profession of engineering in this State without being registered or exempted in accordance with the provisions of this Act, or any person presenting or attempting to use as his own the certificate of registration or the seal of another, or any person who shall give any false or forged evidence of any kind to the Board or to any member thereof in obtaining a certificate of registration, or any person who shall violate any of the provisions of this Act, be fined not less than One Hundred ($100.00) Dollars nor more than Five Hundred ($500.00) Dollars, or be confined in jail for a period of not exceeding three (3) months, or both. Each day of such violation shall be a separate offense."

Without question paragraph numbered four (4) of the contract provides that Blau was retained in the capacity of Consulting Engineer and that it was his duty to supervise all engineering work, detailing and co-ordination. From the wording of the statute set out above it was enacted by the legislature for the purpose of requiring that this type of engineering supervision of construction of public works must be done by a registered engineer. It is true that from the testimony Mr. Blau did other types of work for the benefit of the construction job which did not call for professional engineering skill or training or experience. The contract itself in the same paragraph No. 4 also provided that he should be responsible for checking of administrative accounts, miscellaneous expenditures and all labor and material costs and for assisting in the preparation and checking of all records required by the owner or architect pertaining to the progress of the work. He also testified that he was really an office manager on the job. From his testimony it is also obvious that he performed many duties which could not be termed otherwise than those of one who was supervising all engineering work, detailing and coordination. The contract does not appear to be capable of being severed one part from the other. No attempt is made in the evidence of the appellee to show what portion of the work performed by him was as a supervising engineer and what part was as office manager. Blau himself says that none of the work he did was as an engineer. This statement is not borne out by his own testimony, because he went into detail in describing what he did and some of the things he did were unquestionably things requiring engineering skill and knowledge within the meaning of the statute. For instance, he testified that whenever any information was needed in regard to shop sketches, anything in regard to layout work on the construction part, anything they wanted to know, it was his duty to give them all the advice he was capable of giving; that if there was anything that did not conform to the specifications he would take it up with the architect; that "if we are not able to procure any materials he had specified, to take up with the architect or the Board and let them take up with the architect what materials were available and get his approval to use these substitute materials." Mr. Blau's view, according to his testimony, was that he was not doing engineering work on the stadium, because he was not designing it, and the skilled work he did was therefore not engineering. The appellee Blau is of course

suing on his contract and on the contract his recovery must stand or fall. We believe that his contract was for engineering services within the meaning of the statute, and that since he was not a registered professional engineer he cannot recover upon a contract for such services.

■ The appellee argues in his brief that since the supervision and control of the erection of the stadium was under the direction of a registered engineer and architect, Mr. Walmer, the architect for the School District, the appellee was not required to be a registered engineer because of Section 20(c) in statute quoted above. This position is untenable because Mr. Blau's employment as an engineer to supervise the engineering by the appellants did not make him subordinate to the owner's architect, within the meaning of the exception. A supervising engineer employed by a general contractor owes his duty to his employer, the contractor. It is his duty to direct the workmen employed on a project so that the work will be done in such a manner and materials used will be of such a character as will meet with the approval of the supervising architect employed by the owner or builder, and thus enable his employer to complete his contract to the satisfaction of the architect. The duties of the two are separate. It will be noted that Section 20(c) of the statute exempts from the exemption an engineer whose practice includes responsible charge of design or *supervision*.

■ The appellee also argues that if the contract should be held by the court to be illegal and non-severable, still the question of illegality of the contract was one of fact for the jury. With this we do not agree. The construction of the contract and application of the law thereto was and is peculiarly the burden of the courts. The jury's finding to the effect that Blau was not to be paid one-half of the fees solely for services performed by him as a professional engineer and that Blau under the contract was not required to perform the work of a professional engineer must be regarded as opinions of the jury on a question of law which only the court should have decided. These issues should never have been submitted to the jury. No objection was made by the appellants to the charge to that effect, but we believe the question is preserved for appeal by their motions for instructed verdict, made before the case was submitted to the jury. We believe that the appellants' motion for instructed verdict should have been granted and the appellants' third point is sustained.

By their first point the appellants contend that the appellee was not entitled to judgment on the contract sued upon in the absence of any pleading or proof that he was a registered engineer. There is no direct authority in point in the jurisprudence of our State, but in the case of Clark v. Eads, Tex.Civ.App., 165 S.W.2d 1019, error refused, it was held that the burden was on a plaintiff in a suit to recover for architectural services to plead and prove that he was a licensed architect as required by Article 249a, Vernon's Annotated Civil Statutes, relating to architects. In the present case, we do not find it necessary to hold and we do not hold that one suing on a contract for services as a professional engineer must both plead and prove that he is a registered engineer in order to recover. In the present case the testimony is without dispute that the appellee was not a registered professional engineer and it is not necessary to decide this point in order to pass on this appeal.

■ In reaching the above conclusions, it is realized that we have assumed the validity of the statute relating to professional engineers. No attack was made upon the statute by the appellee. We have also assumed, with some misgiving, that such statute is plain and unambiguous in defining the terms professional engineer and professional engineering. From an examination of text books and encyclopedia we learn that engineering as a profession was first so recognized strictly as a military calling. An engineer was a person skilled in making and using engines of war, building fortifications, forts, canals, bridges, dams and other structures needed in warfare. When such skill became useful and

was used in non-military life for building dams, waterways, docks, harbors and other large building projects the profession was termed civil engineering to distinguish it from the military. With the advancement of learning and science, civil engineering has been sub-divided into many different branches such as mechanical, electrical, mining, hydraulic, petroleum, chemical and many other branches of engineering. The statute in question seems to embrace all forms of engineering and to require that one using such knowledge and principles in the designing or supervision of construction of public works must have his qualifications examined and approved by the State Board of Registration of Professional Engineers. It is in the belief that such is the purpose and effect of the statute that we make the holdings announced above.

That portion of the judgment of the District Court is reversed which awards to the appellee R. E. Blau the sum of $1509.21 to be paid by the clerk of the District Court out of the registry of the court and judgment is here rendered that the appellee R. E. Blau have and recover nothing of and from appellants W. L. Gray and T. B. Buie, and that the clerk of the District Court of Jefferson County pay to the appellants W. L. Gray and T. B. Buie the sum of $1602.14, being the sum of money in the registry of said court; that portion of the judgment which awards to Nederland Independent School District all its costs against the appellants Gray and Buie is reversed and that portion which awards to the Nederland Independent School District from appellants Gray and Buie the sum of $75.00 as attorneys' fees is reversed, and judgment is here rendered that Nederland Independent School District have and recover of and from appellee R. E. Blau all of its costs and the sum of $75.00 as attorneys' fees. All costs of this appeal are assessed against the appellee.

Reversed and rendered.

WALKER, Justice (dissenting).

I agree with the conclusion that Blau was not a "subordinate" within the meaning of Section 20(c). However, I do not agree with the conclusion that Blau violated Section 2, as a matter of law. The significant words of the definition in Section 2 of *professional engineering* are these: "The practice of professional engineering, * * * includes any professional service * * * when such professional service requires the application of engineering principles *and* interpretation of engineering data." Blau did interpret engineering data, but I am not satisfied that his services also involved, as a matter of law, the application of engineering principles. The court's opinion, as I construe it necessarily interprets *and* as meaning *or,* thus holding that one acts as a professional engineer, not only when his services involve the application of engineering principles, but also when his services are limited to the interpretation of engineering data. I believe that *and* should be construed literally, and that one only acts as a professional engineer when his services involve *both* engineering principles and the interpretation of engineering data—to reach a conclusion to which both are necessary. Otherwise, this statute will cover the activities of persons skilled only in the various crafts and trades, who must necessarily interpret engineering data to some extent; and I believe that the statute was not intended to regulate such persons. These conclusions perhaps should be elaborated, and I shall do so as opportunity permits. My interpretation of the statute would require an affirmance of the trial court's judgment. The terms *consulting engineer* and *engineering services* in Section 4 of the contract are not defined in the contract; extraneous proof was necessary, and thus admissible, to show what these words meant to the parties and thus, to show whether Blau's services were within the statute or not.