Nelson **ENGLISH** d/b/a Air Conditioning Engineering, Appellant,

v.

**CENTURY INDEMNITY COMPANY,**
Appellee.

No. 13668.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 11, 1961.

Mahoney & Shaffer, Corpus Christi, for appellant.

Fischer, Wood, Burney & Nesbitt, Corpus Christi, for appellee.

MURRAY, Chief Justice.

This is an appeal from a judgment of the 105th District Court of Nueces County, wherein it was adjudged and decreed that plaintiff and cross-defendant, Nelson English, d/b/a Air Conditioning Engineering Company, and intervener, Ward Howe, d/b/a Ward Howe Electric Company take nothing; that defendant and cross-plaintiff, Century Indemnity Company, recover the sum of $7,045, which sum of money had been tendered into the registry of the court by the State of Texas; and that Century Indemnity Company recover from Nelson English the sum of $4,112.73, together with interest. Both Century Indemnity Company and English excepted to the judgment and gave notice of appeal, but only English perfected his appeal by timely filing an appeal bond. Ward Howe did not appeal and need not be further mentioned. Nelson English, d/b/a Air Conditioning Engineering Company, will hereinafter be referred to as appellant and Century Indemnity Company as appellee. Appellant was the original plaintiff, but the recovery was had upon the cross-action of appellee.

The construction and legality of three contracts are here involved. (1) A construction contract between appellant and the State of Texas acting by and through its Board of Control. (2) A performance bond given to the State, with appellant as principal and Century Indemnity Company as surety, guaranteeing the performance of the construction contract. (3) The indemnity agreement between appellant and appellee, wherein appellant agreed to indemnify appellee "against any and all damages, loss, costs, charges and expenses of whatsoever kind or nature, including counsel and attorney fees, * * * which it shall or may at any time sustain or incur by reason or in consequence of its suretyship or procurement of suretyship, or which it may sustain or incur in connection with any litigation, investigation, collection of premiums, or other matter connected with suretyship, * * *."

It is appellant's contention that the construction contract was illegal and void because it violated Section 19 of Article 3271a, Vernon's Ann.Civ.Stats., in that R. V.

Woodward, who signed the engineering plans and specifications and under whose supervision the engineering work was done, was not a registered professional engineer, as is required by that section. The pertinent part of Sec. 19 reads as follows:

"* * * it shall be unlawful for this State, or for any of its political subdivisions, for any county, city, or town, to engage in the construction of any public work involving professional engineering, where public health, public welfare or public safety is involved, unless the engineering plans and specifications and estimates have been prepared by, and the engineering construction is to be executed under the direct supervision of a registered professional engineer; * * *."

Under the provisions of the construction contract, appellant was to install summer and winter air conditioning in the Marine Laboratory Building at Rockport, Texas, which building was being constructed for the Texas Game and Fish Commission, according to certain plans and specifications, for a fixed contract price of $11,545. Upon its face, this was a perfectly legal and valid contract. Before entering into the performance of this contract it was necessary for appellant English to furnish a performance bond in the sum of $11,545, guaranteeing the completion of the construction contract according to its terms. In order to induce appellee to sign such a bond, appellant made a written application to appellee, coupled with an agreement to indemnify appellee as above stated. Appellee accepted the application and agreement of indemnity and signed the performance bond and it was posted with the State, and the work was begun by appellant under the construction contract.

Appellant contends that he had practically completed the contract when it was cancelled by the State and appellee called upon to complete it. Appellant had been paid the sum of $4,500 at the time, and contends he was due the balance of the contract

price, amounting to $7,045, less just a few hundred dollars that it would have taken to complete the contract. Appellee completed the contract and by cross-action recovered judgment as above stated.

Appellant's defense against appellee's cross-action was that the construction contract was illegal and void, as being in violation of Sec. 19, art. 3271a, supra, and this being true, the performance bond signed by appellee as surety was likewise void, and that the indemnity agreement executed by appellant to secure appellee as a surety on his performance bond was also void.

We may, for the purpose of this opinion, assume without deciding, that the construction contract was illegal and void as violating Sec. 19, supra, and that the performance bond was illegal and void, because given to guarantee the performance of an illegal contract. Nevertheless, this would not render the indemnity agreement between appellant and appellee void and unenforceable, because it was given in consideration of appellee's signing the performance bond as surety, and the consideration was paid when appellee so signed.

There is no intimation that anyone discovered the invalidity of the construction contract until after all the transactions herein involved had taken place. The construction contract was perfectly legal on its face, and there was nothing to put appellee or anyone else upon notice that R. V. Woodward, who signed the plans and specifications and under whom the work was performed, was not a registered professional engineer. The parties were charged with knowledge of the provisions of Sec. 19, supra, but not with the fact that R. V. Woodward was not a registered professional engineer. He was probably a professional engineer, but not a registered one.

It is quite possible that if appellee had discovered the illegality of the construction contract and had denied any liability

when the State called upon it to complete the construction contract, it might have successfully defended itself in any suit that the State might have brought against it. Massachusetts Bonding & Insurance Co. v. Gottlieb, Tex.Com.App., 15 S.W.2d 1020; Edwards County v. Jennings, 89 Tex. 618, 35 S.W. 1053. Appellee did not discover this defense, and in good faith, as found by the jury, proceeded to complete the construction contract. It is therefore entitled to recover upon its cross-action.

█ The law seems to be well settled that where a separate and independent written indemnity agreement is given to secure a surety upon a performance bond for an illegal contract, such indemnity agreement is not tainted by such illegality, unless the indemnitee knew or should have known of the illegality of the original contract. Illies v. Fitzgerald, 11 Tex. 417; 23 Tex.Jur. p. 524, § 4; 24 Am.Jur. p. 461, § 11; 42 C.J.S. Indemnity § 7, p. 573.

The fifth paragraph of the indemnity contract made appellee the exclusive judge of whether it would contest claims made upon it under the performance bond in the following broad language:

"Fifth: That the Company shall have the exclusive right for itself, and for the indemnitor(s), to decide and determine whether any claims * * * made * * * against the Company and/or principal on said bond, jointly or severally, shall or shall not be defended * * * and its decision shall be final, conclusive and binding upon the indemnitor(s), and any * * * loss, cost, charge, expense or liability thereby incurred, sustained, or paid, shall be borne by the indemnitor(s) and the indemnitor(s) especially consent thereto."

In the face of this provision, the question is not whether appellee might have successfully defended against the claims and demands of the State, or whether there was legal liability under the performance

bond, or whether appellee was negligent in spending too much money in completing the construction contract, but did appellee act in good faith in completing the contract and in making other expenditures? Central Surety & Ins. Corp. v. Martin, Tex.Civ. App., 224 S.W.2d 773; Fidelity & Casualty Co. of New York v. Harrison, Tex.Civ. App., 274 S.W. 1002; United States Fidelity & Guaranty Co. v. Jones, 5 Cir., 87 F.2d 346.

█ We are not here dealing with the common law principle to reimburse the surety for any amount paid upon the debt in which the liability of the principal is controlling, but with liability under the express terms of an agreement of indemnity entered into by appellant and appellee. Such a contract is not against public policy, and "as the parties bind themselves, so shall they be bound."

█ The only test is, in making payments under the performance bond, did appellee act in good faith and was it free from fraud? Appellant does not contend that, in completing the construction, appellee acted in bad faith or fraudulently; he only contends that appellee acted negligently. The jury expressly found that appellee acted in good faith, and of course if it acted in good faith, it did not act fraudulently.

█ Appellant next contends that the trial court erred in not permitting him to plead and introduce evidence to prove that he was entitled to recover the $7,045 tendered into the registry of the court by the State, based on quantum meruit. If appellant had a cause of action on a quantum meruit basis, it arose when the State cancelled his written contract on October 26, 1954, and the first time he filed any pleading setting up a claim on quantum meruit was when he filed his first amended original petition on June 17, 1959, nearly five years after his cause of action had arisen. The two and four statutes of limitation were plead. Furthermore, if he had a cause of

action on this basis, it would have to be against the State, and he has never named the State as a defendant. Before appellant could maintain a suit against the State on a quantum meruit basis, there would have to be pre-existing legislation giving permission or authority to appellant to sue the State, and no such pre-existing law was shown to exist. State Constitution, art. III, § 44, Vernon's Ann.St.Const.; M.M.M., Inc. v. Mitchell, 153 Tex. 227, 265 S.W.2d 584; Gray v. Blau, Tex.Civ.App., 223 S.W.2d 53.

■ Regardless of everything else, appellant was not prejudiced by the ruling of the court, because the agreement of indemnity was broad enough to assign to appellee any claim that he might have for work done under the construction contract even though it was due him on a quantum meruit basis.

■ Appellant next complains because the court submitted to the jury Issue No. 6, relating to attorney's fees expended in defending appellant's cause and in prosecuting appellee's cross-action. We overrule these contentions because under the broad language contained in the agreement of indemnity, appellee was entitled to recover attorney's fees, whether spent in defending appellant's cause of action, or in prosecuting its cross-action, and the jury on sufficient evidence found such fees to be of the sum of $3,500. The only question actually propounded to the jury was the amount of the attorney's fees, and the answer of the jury was supported by the evidence.

Appellant's ninth and tenth points, complaining of the submission of Special Issue No. 7 to the jury, are without merit and are overruled. Under the terms of the indemnity agreement, appellee was clearly entitled to recover all costs and expenses incurred in connection with its defense of appellant's suit for negligence, as well as those incurred in prosecuting its cross-action, and the only question really submitted to the jury was the amount of such costs and expenses. The answer of the jury was supported by the evidence.

Appellee presents one cross-point of error, reading as follows: "The Trial Court erred in overruling Cross-Appellant's Motion for Judgment against Nelson English, Cross-Appellee, for the sum of $5,112.73, and in limiting the amount of the recovery in said judgment to the sum of $4,112.73."

■ The record does not show that Century Indemnity Co., filed an appeal bond, and therefore it is not a cross-appellant. However, it did file a motion to disregard the jury's answer to Special Issues Nos. 1, 2 and 5, and to allow it recovery for the full amount expended in completing the construction contract. The trial court overruled this part of appellee's motion for judgment, and in effect gave appellant credit for the $1,000 spent negligently in such completion. The jury found in effect that this $1,000 was spent by appellee in good faith. As we have heretofore pointed out, negligence is no defense to the provisions of the indemnity contract, the only defense being bad faith on the part of appellee in making the expenditures. While it did not file an appeal bond, appellee did except to the judgment of the court and gave notice of appeal. In order to permit this question on appeal, it was not necessary for appellee to file a motion for new trial, as is required by Rule 324, Texas Rules of Civil Procedure, as amended Sept. 1, 1957, as appellee comes within the exceptions stated in that rule. See, Rule 324, Vernon's Texas Rules of Civil Procedure, 1960 Pocket Parts.

Neither is appellee precluded from assigning this cross-point by the provisions of Rule 325 or Rule 374, T.R.C.P. We sustain the cross-point.

Accordingly, the judgment of the trial court will be amended so as to allow a recovery by appellee against appellant in the sum of $5,112.73, instead of $4,112.73, and as thus amended the judgment is affirmed.