**H. M. FORD, Appellant,**

v.

**AETNA INSURANCE COMPANY, Appellee.**

**No. 123.**

Court of Civil Appeals of Texas.

Corpus Christi.

Sept. 23, 1965.

Rehearing Denied Oct. 21, 1965.

Bruce Waitz, San Antonio, Robert L. Joseph, of Burnett, Burnett & Joseph, Sinton, for appellant.

Frank Nesbitt, of Fischer, Wood, Burney & Nesbitt, Corpus Christi, for appellee.

SHARPE, Justice.

This is an appeal from a summary judgment for Aetna Insurance Company, appellee, plaintiff below, against H. M. Ford, Julian Priour and Kenneth Griffin, defendants below, in the amount of $138,097.-10, based upon a general contract of indemnity, from which only Ford has appealed. We affirm the judgment of the trial court.

By five points, appellant contends that the summary judgment was improperly granted and that the trial court erred, in substance, as follows: (1) because genuine issues of material fact were presented, (2) in permitting appellee, after having partially granted its motion for summary judgment, to dismiss its cause of action for attorney's fees without prejudice, thus permitting appellee to split its cause of action, (3) in entering final summary judgment after permitting and taking such action as to attorney's fees, (4) there was no evidence of the amount of appellee's loss and expense, and (5) there was a fatal variance between appellee's allegations and proof. Appellee has replied to such con-

tentions by five counterpoints in support of the summary judgment.

The material summary judgment evidence may be briefly summarized as follows: In 1959, appellant Ford owned substantially all of the shares of stock in Sinton Plumbing and Supply Co., Inc., and he contracted to sell his corporate stock to Griffin and Priour for $60,500.00, payable in installments amounting to 10% annually of the purchase price, plus 6% on the unpaid balance so that Griffin and Priour would each own 49% of the stock and Ford would retain 2% of same. Priour became President, Ford, Vice President and Griffin, Secretary-Treasurer of the corporation. Aetna executed performance and payment bonds for Sinton Plumbing and Supply Co., Inc., in favor of the general contractors on three construction projects, as follows: (1) William E. Goetz Construction Company, San Antonio, Texas, April 13, 1961, for $75,400.00, in connection with the remodeling and erection of an addition to the Post Office at Beeville, Texas; (2) Martin Brothers General Contractors, San Antonio, Texas, for $206,117.00, October 17, 1961, in connection with the Hilltop Village Home for the aged at Kerrville, Texas; and (3) Mid-States Construction Company, San Antonio, Texas, for $7,751.00, December 4, 1961, in connection with a project at Fort Hood, Texas. Sinton Plumbing and Supply Company, Inc., was in a bankrupt condition as of February 17, 1962, or earlier, and was actually adjudged bankrupt in United States District Court on or about March 1, 1962. Aetna claims to have paid $138,097.10 in connection with completion of the three construction projects on which Sinton defaulted. The general contract of indemnity dated April 8, 1961, was executed by Sinton Plumbing and Supply Co., Inc., a Texas Corporation, and individually by Ford, Priour and Griffin. Pertinent portions of it are set out in the footnote.[1]

1. "FIRST: That they will at all times indemnify and keep indemnified the Company, and hold and save it harmless from and against any and all damages, loss, cost, charges and expenses of whatsoever kind or nature. including counsel and attorney fees, whether incurred under retainer or salary or otherwise, which it shall or may at any time sustain or incur by reason or in consequence of its suretyship or procurement of suretyship, or which it may sustain or incur in connection with any litigation, investigation, collection of premiums, or other matter connected with such suretyship, including any suit instituted to enforce the obligations of this agreement of indemnity; and the Indemnitor(s) will pay over to the Company, its successors and assigns, all sums of money which it or its representative shall pay or cause to be paid, or become liable to pay on account of such suretyship, and on account of any damages, costs, charges, and expenses of whatsoever kind or nature in connection therewith as aforesaid, such payment to be made to the Company as soon as it shall have become liable therefor, whether it shall have paid out such sum or any part thereof or not, and said Company is hereby authorized to prove such expenses, costs and attorney fees, in any action or proceeding and to include the same in any judgment.

FOURTH: That the Company shall have the exclusive right for itself, and for the Indemnitor(s), to decide and determine whether any claim, demand, liability, suit, action, order, judgment or adjudication made or brought against the Company and/or principal on any bond, jointly or severally, shall or shall not be defended, tried or appealed, and its decision shall be final, conclusive and binding upon the Indemnitor(s), and any order, judgment or adjudication made, entered or affirmed, as a result thereof, or any loss, cost, charge, expense or liability thereby incurred, sustained or paid, including attorneys' fees, shall be borne by the Indemnitor(s), and the Indemnitor(s) especially consent thereto.

SIXTH: The Indemnitor(s) agree to accept vouchers or affidavits of any loss paid by the Company by reason of such suretyship, together with vouchers or affidavits of payment of all costs and expenses whatever, incurred by the Company in adjusting such loss, or in completing any contract, as prima facie evidence against the Indemnitor(s) of the fact and extent of the Indemnitor(s') liability to the Company.

EIGHTH: That it shall not be necessary for the Company to give the Indemnitor(s), or any one or more of them, notice of any act, fact, or information, coming to the notice or knowledge of the Com-

Under his point one, appellant contends, among other things, that the 4th, 6th, 7th, 8th, 11th and 12th clauses of the contract of indemnity are contrary to public policy, and, therefore, void and unenforceable. However, appellant concedes that even if his contentions in such respect should be upheld, the entire contract of indemnity is not void, and that sufficient provisions would remain to impose a common law liability upon him; and appellant further takes the position in such event that he was and is obligated to show that appellee failed to make out a case of common law liability against him. Appellant also agrees that if his contentions concerning invalidity of certain portions of the contract of indemnity are not well taken and if all of its provisions are enforceable, then that the contract will support the judgment in the absence of bad faith on the part of Aetna, regardless of Aetna's legal liability to the payees of the performance and payment bonds which Aetna executed as surety on the three projects hereinabove mentioned, assuming the sufficiency of the other summary judgment evidence.

■ Appellant's argument that certain provisions of the contract of indemnity are contrary to public policy is, in substance, that because the Fourth Clause gives to the Company (Aetna) the exclusive power to make conclusive determination of claims and demands to be paid; and the Sixth Clause makes vouchers or affidavits prima facie evidence of any loss paid by the Company; and the Seventh Clause gives the Company the power to alter and modify instruments and execute new obligations which fix the indemnitor's liability without notice to them; and the Eighth Clause eliminates the requirement of notice to indemnitors concerning certain other matters; and the Eleventh Clause gives the Company the power to obtain releases from liability and charge indemnitors with the expense thereof; and the Twelfth Clause gives to indemnitors the right to terminate the contract upon notice to the Company which shall not be effective until expiration of ten days after receipt thereof, without modifying or discharging obligations of the indemnitors under the contract prior to the effective date of such notice; that the effect of such provisions is to endow the Company with the powers of a Judge (without using the term) to conclusively determine the indemnitor's liability to the Company; all of which appellant says is contrary to various provisions of law, and particularly the following: Article V, § 11, Texas Constitution Vernon's Ann.St. (providing that no Judge shall sit in any case wherein he may be interested); Articles 224–238, V.A.C.S. (relating to arbitration

pany concerning or affecting its rights or liability under any such instruments executed by it, or the rights or liability of the Indemnitor(s) hereunder, notice of all such being hereby expressly waived.
ELEVENTH: The Company may at any time hereafter take such steps as it may deem necessary or proper to obtain its release from any and all liability under any of the above mentioned obligations, or under any other instruments within the meaning of Section Seventh hereof, and secure and further indemnify itself against loss, and all damages and expenses which the Company may sustain or incur, or be put to, in obtaining such release, or in further securing itself against loss, shall be borne and paid by the Indemnitor(s).
TWELFTH: Any of the Indemnitor(s) may by written notice to the Home Office of the Company at Hartford, Connecticut, terminate their liability as to bonds, undertakings and other obligations in the nature of a bond executed by the Company subsequent to ten days after the receipt of such notice by the Company. It being understood and agreed that such notice of termination shall in no way modify, bar or discharge any obligations of the Indemnitor(s) to be performed under this agreement in connection with bonds executed by the Company prior to the effective date of the said notice of termination. It is further understood and agreed that in the event any of the Indemnitor(s) avail themselves of the privileges extended under this paragraph it shall be without prejudice to any right, claim, demand or cause of action which the Company has or may have against the other Indemnitor(s) under or by virtue of this agreement."

of disputes between parties); Article 2224, V.A.C.S. (prohibiting acceptance of service, waiver of process, entry of appearance, or confession of judgment by contract or writing executed prior to institution of suit); and Rule 184, T.R.C.P. (adopting common law rules of evidence where not inconsistent with Texas Statutes or Rules of Procedure).

We do not agree with appellant that such provisions of the contract of indemnity are void and unenforceable because contrary to public policy. The provisions complained of by appellant have been passed upon either in exact wording or in substance and have been upheld. See English v. Century Indemnity Co., 342 S.W.2d 366 (Tex.Civ. App.1961, n. w. h.) and cases therein cited, which include Central Surety & Ins. Corp. v. Martin, Tex.Civ.App., 224 S.W.2d 773; Fidelity & Casualty Co. of New York v. Harrison, Tex.Civ.App., 274 S.W. 1002; United States Fidelity & Guaranty Co. v. Jones, 5 Cir., 87 F.2d 346. See also Lander v. Phoenix Indemnity Company, 329 S.W. 2d 951 (Tex.Civ.App., 1959, n. w. h.).

In English v. Century Indemnity Company, supra, wherein the same form of indemnity agreement appears to have been involved, the Court said:

"We are not here dealing with the common law principle to reimburse the surety for any amount paid upon the debt in which the liability of the principal is controlling, but with liability under the express terms of an agreement of indemnity entered into by appellant and appellee. Such a contract is not against public policy, and 'as the parties bind themselves, so shall they be bound.'" 342 S.W.2d 369.

Under the above-cited cases, the provisions of the contract of indemnity herein are not against public policy, but, on the other hand are valid and enforceable. Those cases also stand for applicable rules as follows: Common law principles concerning a surety who claims reimbursement for amounts paid out by it do not apply to indemnity contracts such as the one here involved. Whether the surety or his principal are or are not liable on the bond which was paid by the surety is immaterial. In this case recovery of the amounts paid by Aetna in connection with the performance and payment bonds is not dependent upon whether it is legally liable on the same. The fact and extent of appellant's liability to Aetna under the contract of indemnity may be prima facie established by vouchers or affidavits. Bad faith on the part of Aetna may be urged by appellant as a defense, but where a genuine issue of material fact in such respect is not raised by the summary judgment evidence, appellant's reliance on such defense would be ineffective.

This brings us to a consideration of appellant's contention that a genuine issue of material fact was presented as to whether Aetna acted in good faith in paying out various sums of money under the performance and payment bonds issued by it. Appellant concedes that lack of diligence or negligence is not the equivalent of bad faith; and that even gross negligence is not the same as bad faith, but may be evidence tending to show it. Citizens Bridge Co. et al. v. Guerra, 152 Tex. 361, 258 S.W. 2d 64, 69 (1953). Appellant's principal reliance is upon the proposition announced in the last-cited case that wilful ignorance is the equivalent of bad faith, and bad faith may be shown by a wilful disregard of and refusal to learn the facts when available and at hand. Appellant contends that the summary judgment evidence herein is sufficient to raise a genuine issue of material fact concerning wilful ignorance on the part of Aetna in this case. A review of the evidence relied upon by appellant to show wilful ignorance on the part of Aetna leads to the conclusion that it is legally insufficient to raise the issue. At most, it could be argued that negligent ignorance might be shown, and that is not sufficient to raise the issue of bad faith. Improper motive is an essential element of bad faith. King v. Swanson, 291 S.W.2d 773 (Tex.Civ.App.

1956, n. w. h.). The evidence is wholly insufficient to raise an issue that Aetna can be charged with improper motive in connection with discharging liability on the performance and payment bonds. Sinton Plumbing & Supply Co., Inc., as sub-contractor, defaulted on each of the three construction projects hereinbefore mentioned and ultimately became bankrupt. The summary judgment evidence supports the view that Aetna did the best it could under the circumstances to work such matters out in good faith. The purpose of the general contract of indemnity was to protect Aetna in such event. One of the cases relied on by appellant is Gulf, Colorado & Santa Fe Railway Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492 (1959). That case involved a different type of indemnity agreement which did not contain some of the clauses before us in this case. However, much of what is said by Justice Griffin speaking for the Court, concerning the summary judgment phase of the case, supports appellee's position here that there was no material issue of fact presented on the question of bad faith on the part of appellee.

Appellant's point one is overruled.

Appellant's points two and three, which complain of the trial court's action, in permitting appellee, after it partially granted appellee's motion for summary judgment to dismiss its cause of action for attorney's fees, and in thereafter dismissing the same without prejudice, which allegedly permitted appellee to split its cause of action, do not present reversible error. If the action of the trial court was erroneous in such respect, which we expressly do not decide, no harm resulted to appellant. If, as contended by appellant, the cause of action asserted by appellee was indivisible and improperly split by dismissing that portion relating to attorney's fees, the doctrine of res judicata will apply and the judgment entered by the trial court will be a bar to future recovery by appellee. Cole v. Wadsworth, 376 S.W.2d 13 (Tex.Civ.App.1964, wr. ref. n. r. e.); 34 Tex.Jur.2d Judgments,

§ 516, p. 592. The judgment in this case does not allow a recovery against appellant for any portion of the $13,809.71 originally claimed by appellee as reasonable attorney's fees in this case. Whether it can be recovered in a future suit involves a question which is not now before us. Any error of the trial court concerning dismissal of appellee's cause of action for attorney's fees would, in any event, be harmless under Rule 434, T.R.C.P.

Appellant's points two and three are overruled.

Appellant by his fourth point contends that there was no evidence of the amount of appellee's loss and expense. Appellant's basic argument under this point is that photocopies of cancelled checks issued by Aetna are not vouchers within the terms of the contract of indemnity, and, even if they are, that they were proved only by deposition testimony of Aetna's employee; therefore, a fact issue as to credibility was presented. Such argument is not well taken. The checks involved are not ordinary checks but are voucher-form checks which meet the requirements of a voucher in the sense used in the contract of indemnity. In Robertsons' Guardian v. Fidelity & Casualty Co. of New York, 227 Ky. 114, 12 S.W.2d 298 (Court of Appeals, Kentucky, 1928), the Court said: "A voucher means, when used in connection with the disbursement of money, a written or printed instrument, in the nature of a bill of particulars, account, receipt, or acquittance, that shows on its face the fact, authority, and purpose of the disbursement. 40 Cyc. 228; People v. Swigert, 107 Ill. 494, 495; State v. Moore, 36 Neb. 579, 54 N.W. 866. * * * a canceled check is undoubtedly a sufficient voucher, when it is properly endorsed and shows that it was an expenditure which the guardian was entitled to make." Admissibility of such vouchers was established under Art. 3737e, V.A.C.S., known as the "Business Records Act." That article recognizes an exception to the hearsay rule and has been upheld. See Travis Life Ins. Co. v. Rod-

riguez, 326 S.W.2d 256 (Tex.Civ.App.1959, writ refused, n. r. e. by per curiam opinion of the Supreme Court in 160 Tex. 182, 328 S.W.2d 434), specifically approving the construction of the Statute by the Austin Court of Civil Appeals. Article 3731b, V.A.C.S. provides for the use of photo copies as evidence when proved in accordance with the Business Records Act. The Sixth paragraph of the contract of indemnity herein provides in part that "the Indemnitor(s) agree to accept vouchers or affidavits—as prima facie evidence against Indemnitor(s) of the fact and extent of the Indemnitor(s) liability to the Company." The photostatic copies of the vouchers here involved were attached to the deposition of E. D. McGee, bond counsel for Aetna, speak for themselves and were thus presented to appellant. McGee's deposition in the form of answers to written interrogatories was an affidavit. See Sudv. 18, Article 23, V.A.C.S.; Shelton v. Berry, 19 Tex. 154 (1857). It appears from the record in this case that the contract of indemnity, and particularly the Sixth paragraph thereof, was complied with when Aetna furnished to appellant both the vouchers and an affidavit showing the amount of its loss and expense. It thus appears that the credibility of McGee was not involved because of such facts. Further, one exception to the rule that testimony of an interested witness merely raises a fact issue for determination by the trier thereof is that where such testimony is direct and positive and of such a nature that it can be readily contradicted if untrue and it is not so contradicted, facts may be conclusively established thereby. See Nagelson v. Fair Park National Bank, 351 S.W.2d 925 (Tex.Civ.App.1961, wr. ref. n. r. e.), which is a summary judgment case. Here the vouchers supported by affidavit fully disclosed the details and purpose for which issued and if incorrect were readily contradictable. The summary judgment evidence did not raise a genuine issue of material fact as to the amount of Aetna's loss and expense under the contract of indemni-

ty. On the record presented here, the fact and extent of appellant's liability were established by vouchers and by affidavit.

Appellant's point four is overruled.

Appellant contends by his fifth point that the summary judgment was improper because there was a fatal variance between the allegations of appellee's trial petition and its proof. Appellant points to several claimed variations as to dates and names between appellee's pleading and the summary judgment evidence concerning the performance and payment bonds on the Beeville and Kerrville projects. Although we do not believe that such claimed variances actually exist, even if they did, under the broad allegations of appellee's pleading the same would not be fatal on an ordinary trial. But here we are dealing with a motion for summary judgment under Rule 166–A, T.R.C.P., which "pierces the pleadings." Statham v. City of Tyler, 257 S.W. 2d 742, 745 (Tex.Civ.App., 1953, wr. ref. n. r. e.). The summary judgment evidence fully set out all of the bonds executed by Aetna as Surety on the three construction projects mentioned, as well as the contract of indemnity signed by appellant and others. All of the dates, names and places were therein fully disclosed to appellant who did not raise fact issues as to the contentions now urged as to such bonds or that any other bonds were involved. In any event, Aetna's cause of action was basically upon the contract of indemnity, about which appellant does not complain under his fifth point. The other bonds and instruments were evidentiary as to the main cause of action. It was conclusively established that the performance and payment bonds on the various construction projects were issued pursuant to the contract of indemnity and that Aetna suffered losses and paid out money on account thereof. Appellant's point five is overruled.

The judgment of the trial court is affirmed.