## JOHNSON RANCH ROYALTY CO. et al. v. HICKEY et al.

### No. 3439.

Court of Civil Appeals of Texas. Amarillo.

July 12, 1930.

Rehearing Denied Sept. 24, 1930.

Underwood, Johnson, Dooley & Simpson, of Amarillo, for appellants.

Dorenfield, Foster & Fullingim, of Amarillo, for appellees.

HALL, C. J.

The appellee Hickey, Charles H. Pierce, Walter S. Reed, Frank A. Rogers, Annie R. Grossman, Mary R. Stratton, and C. F. Hoeckel, filed this suit against Johnson Ranch Royalty Company, Inc., Ed R. Mayer, president of the corporation, and Harry W. Wilson, its secretary, to enforce their statutory right as stockholders in said corporation to inspect its books and records and to make and have made an audit of the records, books of accounts, receipts, vouchers, bills, and all other documents evidencing the financial condition of the Johnson Ranch Royalty Company.

They made a written demand upon Mayer on May 28, 1929, who acknowledged the receipt of the written demand, and said Secretary Wilson, on June 24, 1929, mailed a reply signed by the company and by Mayer as president of the Johnson Ranch Royalty Company and of the Rock Creek Oil Corporation, stating that the books were open for audit under the following conditions: (1) That the audit should be thorough in all respects and cover all accounts of both companies since the dates of organization of each company and disclose in what manner Dr. Mary E. Bates and E. K. Whitehead acquired their stock in both companies, disclosing the amount paid in cash and the amounts received as fees, commissions, appreciations, and gifts from Ed. R. Mayer, and the time and circumstances of the same and how other individuals signing the demand acquired their stock. (2) That the firm of auditors selected by the plaintiffs should be well known, well established, and a credible firm of certified public accountants, and that, to be acceptable, a certified public accountant must himself actually do the work and not delegate the examination of accounts and a report thereon to any bookkeeper or employee; that he must have had accounting experience in relation to the oil business. (3) That any such auditor should be employed by the plaintiffs at their own expense, and that neither company should be put to any manner of expense of interference in the conduct of its business in order to comply with the demands regarding such audit. (4) That such auditor must make an affidavit in the state of Colorado and another in Texas that his audit will be complete and will be made without fear or favor. (5) That the plaintiffs, as a condition precedent, should pay in to the companies the sum of $500 cash in advance as compensation for the time and work of employees and others in the company. (6) That the plaintiffs should also give to each company a bond of $10,000, conditioned for the safe redelivery of any and all deeds, contracts, books of account, or any other manner of property of the companies which might be placed in plaintiffs' hands for examination. (7) That each of the companies will be furnished forthwith, free of charge, signed and sworn duplicate originals of the report of such auditor. (8) That, when the examination is begun, it shall be prosecuted continuously and diligently and with the least possible interference with the routine business of both corporations, and that a failure on the part of the plaintiffs to so conduct the same authorizes the defendants to forthwith stop the whole procedure. (9) That the audit was not to be commenced on or before August 1, 1929, and that defendants would fix the date immediately after their employees' summer vacations had ended, provided the plaintiffs had previously complied with the foregoing eight conditions.

The plaintiffs replied on June 27, 1929, agreeing to the third condition imposed by defendants and agreeing with reference to the fifth condition that, if the examination and audit placed extra burden upon the members of the defendants' office force, plaintiffs would bear such extra expense. Without conceding the defendants' right to demand bonds in the sum of $10,000, plaintiffs agreed to comply with the sixth condition and also with the eighth condition, but refused to comply with all others.

Having failed to agree upon the conditions under which the audit was to be made, this suit was instituted.

The case was submitted to the court without the intervention of a jury, and resulted in a judgment that plaintiffs have the right to examine, inspect, and audit the records as prayed for, imposing upon plaintiffs the following conditions: That the Johnson Ranch Royalty Company should not be put to any manner of expense or be unnecessarily interfered with in the conduct of its business; second, that neither plaintiffs nor the persons designated by them to conduct such audit and examination should remove any valuable deed or other instrument, contract, or any of the books or papers from the defendants' office; third, that the plaintiffs should execute a bond in the sum of $10,000, payable to the defendant corporation, conditioned upon the safe redelivery to it of any and all papers, documents, etc., used by plaintiffs in conducting said examination; fourth, that a certified public accountant residing in the state should be selected by the plaintiffs to conduct the examination; fifth, that the examination, when commenced, should be conducted continuously and diligently and with the least possible interference with the routine business of the defendant. The judgment decrees that plaintiffs shall have immediate access to all the record books, books of account, receipts, vouchers, bills, papers, and

other documents in any way evidencing the financial condition of the company and that the audit shall be made at plaintiffs' expense. The judgment recites that the court finds that the request and desire of the plaintiffs is made in good faith and in the interest of the stockholders of the Johnson Ranch Royalty Company and without malice on the part of plaintiffs or any desire on their part to do injury to the company or its stockholders.

The court did not err in overruling the defendants' general demurrer to plaintiffs' petition. While several plaintiffs joined in the same action, the petition shows that they each owned stock in the corporation, that they had demanded the right to inspect the books, etc., of the corporation, and that this demand had been denied, except upon conditions imposed by defendants, which the trial court properly held to be unwarranted. The interests of the plaintiffs are not several and distinct, but the relation of each to the corporation is that of a stockholder, and the remedy sought by the action is identical and their interests are the same.

By the second proposition the appellants insist that, because the demand made by plaintiffs is upon a sheet of paper that has the following letterhead: "Johnson Ranch Royalty Co. Inc. Stock Holders Protective Association," and was signed by the seven appellees styling themselves "Executive Committee of Johnson Ranch Royalty Co. Inc. Stock Holders Protective Association"—the demand was insufficient because said Protective Association is not a stockholder.

This contention is without merit. The demand might have been written upon a letterhead of the Standard Oil Company, and the defendants may have been an executive committee of some subsidiary organization of the Standard Oil Company, and yet, if, as individuals, they were stockholders in the defendant company, the demand would have been sufficient, if indeed any previous written demand was required.

R. S. art. 1328, provides that private corporations shall cause a record to be kept of all stock subscribed and transferred and all business transactions, and "their books and records shall at all reasonable times be open to the inspection of any stockholder." We find no statutory requirement that a previous written demand is required before a stockholder can exercise this right. The statute is that the books shall be open, and not that they shall be opened after demand made.

As we construe the petition, the suit is by plaintiffs as individuals, and the demand, if necessary, for the right to inspect the books, is made in the same capacity. No sworn pleading was filed denying the right of the plaintiffs to maintain the action and re-

cover as a committee of the Stock Holders' Protective Association, and, if the petition could be construed as an effort to obtain that right in such capacity, the question has been waived by failure to file a sworn pleading. Moreover, no objection was made to the demand by the defendants upon this ground, and the contention has been waived and comes too late in this court. State v. St. Louis Transit Co., 124 Mo. App. 111, 100 S. W. 1126.

We think the court's judgment and the conditions imposed upon plaintiffs are even more liberal than defendants could insist upon under the law. Unless it had been shown that the plaintiffs had threatened or would likely take possession of valuable records, deeds, etc., the third condition imposed by the court, requiring them to execute a bond in the sum of $10,000, was unnecessarily onerous. The fourth condition, requiring the plaintiffs to conduct the examination by a certified public accountant residing in this state, is also a right to which defendants were not entitled. As said in 6 Thompson on Corporations (3d Ed.) § 4539: "While the right to inspect is a personal right, it by no means follows that it can only be made by the person applying for the right. One entitled to the right may call to his assistance, what help he needs to make the right effective. This means that he may have the aid of an accountant, an attorney, or a stenographer or may have the examination made by his duly authorized agent. 'Since when,' says one of the courts, 'we would inquire, has it been the law that one who has given him a clear right as to property, may not exercise it by any proper agent? The proposition has the quality of novelty, but it is not sound. It must be apparent, on reflection, that if so circumscribed a limit were placed on the right, its exercise, in many instances, would be futile.' "

In 4 Fletcher's Cyc. Corp. § 2830, it is said: "The statutory right of inspection when granted to stock holders may be regarded as personal but this does not mean that the right is a mere personal privilege to be exercised by the stock holder alone. The actual inspection may be made by another person, such as the stock holder's agent or attorney."

In the same authority, section 2831, it is said: "In making extracts or in inspecting books, the stock holder is entitled to have the aid of expert accountants or stenographers, attorneys or other persons. To deny the use of a stenographer would be equivalent to granting a right and then denying the most convenient mode of exercising it and also the use of an accountant is obviously necessary when it is sought to inspect the books of a corporation conducting an extensive business, although the facts may be that such an accountant is not necessary."

To the same effect is the text in 14 C. J. 860, § 1311.

As we understand the authorities, the plaintiffs have the right to make the inspection even without an accountant or with an accountant of their own selection, either from the state of Texas or elsewhere. This right is a privilege, even under the common law, incident to his ownership of stock. As said in 6 Thompson, supra, § 4525: "The right of inspection is grounded upon the proposition that those in charge of the corporation are merely the agents of the stock holders who are the real owners of the property and that the owners are entitled to information as to the manner in which the corporate business is conducted. The property of a corporation, although subject under some conditions to rights of creditors, in the last analysis is that of the stockholder and when one seeks an inspection of its books, records or property, he is in reality but seeking an inspection of his own and that this should be accorded fully, freely and at all times when such inspection will not unreasonably inconvenience others who have a like interest in and rights to the property and that the attempt unreasonably to hamper such inspection by officers, managers or others is an unjust exercise of power and one which courts should not sanction. He is entitled to this right in order that he may ascertain whether the affairs of the corporation are properly conducted and that he may vote intelligently on questions of corporate policy and management. It is not necessary that the stock holder should first show that there is mismanagement where he wishes to make the examination in good faith for the purpose of seeing whether the affairs of the corporation are properly managed."

We are not informed by the record as to the state of the accounts, books, vouchers, etc., and whether they are so complex and involved as to require the services of an expert certified accountant, and it may be that the plaintiffs themselves could by an inspection of the books, if they have been kept in accordance with the law, obtain all the information that they desire, and certainly appellants cannot complain of this condition imposed by the court.

Nor can they complain of the fifth condition which we think is more favorable to them than the law justifies, in requiring that, when the examination is once commenced by plaintiffs, it shall be conducted continuously and diligently until finished. The statute says that the corporation's books and records shall at all reasonable times be open to the inspection of the stockholder, and does not limit them to any particular hours or any period or periods of time which may be reasonable. If they are required to obtain the services of a certified accountant residing in the state who would commence the inspection and for some reason fail or refuse to complete it, this order of the court would work disastrously, and the plaintiffs' right might be defeated.

In 6 Thompson on Corporations, § 4536, it is said: "The right of a stock holder to inspect the books is subject to the qualification that it must be made at reasonable times and in such manner as not to interfere with the conduct of the corporate business. The examination should take place during the business hours of the corporation. * * * The right is not limited to one inspection. It is an incident to ownership of stock and may be exercised at any reasonable time so long as the relation of stock holder subsists. It is within the discretion of courts to compel the corporation to allow an examination at other times than those specified in the statute giving the right where the case presented shows that such an examination is necessary to preserve the rights and interests of the stock holders."

The same authority, section 4537, further says: "The law does not sanction an indefinite delay in granting the right to inspect. The right of inspection is a present right when the demand is made at a reasonable time and an indefinite delay in according this right is equivalent to a denial of it."

The fact that the defendant had its books audited annually and furnished its officers copies thereof is no defense in this proceeding. As said in 6 Thompson, supra, § 4526: "The right can not be defeated by an audit of the company's business and furnishing the stock holder with the auditor's report. Where the right is conferred by statute in absolute terms, the purpose or motive of the stock holder in making the demand for an inspection is not material where it is not unlawful and hence he can not be required to state his reasons therefor. His right to examine is not affected by his motives or the inconvenience to the corporation resulting from such examination. * * * The great weight of American authorities is to the effect that where the right is statutory, it is not necessary for the petition to aver or show the purpose or object of the inspection. Nor is it any defense to allege that the objects and purposes are improper and that the petitioner desires to injure the business of the corporation. The clear legal right given by the constitution and the statute can not be defeated by stopping to inquire into the motives. If this were so the stock holder would be driven from the certain definite right given him by the statute to the realm of uncertainty and speculation."

And in section 4535 it is further said: "Where the right of inspection is made absolute by the statute, the corporation or its officers can not deny inspection on the ground that the applicant is a stock holder in a

competitor corporation * * * or is unfriendly towards the officers of the corporation * * * and it is not enough that the corporation will purchase his stock or have the books inspected by an expert and will furnish the stock holder with extracts, or copies from its books, or that the privilege may be abused or that the holding of the applicant is small in amount."

While, as stated from the text quoted above, the great weight of authority in America is to the effect that, when the right to inspect the books is given by statute, such right is absolute, nevertheless at least one case in this state (Roberts et al. v. Munroe [Tex. Civ. App.] 193 S. W. 734, 735) tends to limit that right where the purpose of the stockholder is shown to be fraudulent. In view of the court's finding that plaintiffs' request was made in good faith, it is not necessary for us to pass upon the question whether the statute makes the right absolute.

In the case of Grayburg Oil Co. v. Jarratt (Tex. Civ. App.) 16 S.W.(2d) 319, 320, Judge Higgins uses language peculiarly applicable to this case, which we quote with approval as follows: "We can see no good reason why a stockholder in a corporation who is dissatisfied with the internal management of the corporate affairs should not have the right to call to the attention of his fellow stockholders conditions in the corporate management with which he is dissatisfied and in good faith regards as prejudicial to the best interest of the corporation and its stockholders. In our opinion, stockholders have such right. The record in this case does not support the facts assumed in appellants' third proposition. On the contrary, the finding of the trial court quoted above shows the plaintiffs are acting in good faith, without malice, in the interest of the stockholders, and without any desire on their part to do injury to the corporation or its stockholders. The evidence supports these findings, and, it further appearing that plaintiffs have been denied access to the books and records of the company for the purpose of obtaining the names and addresses of the stockholders, the writ of mandamus properly issued to protect and enforce the plaintiffs' right of inspection given by article 1328, R. S."

There is a great deal of evidence in the record which shows a want of harmony and in some cases open hostility and antagonism between certain plaintiffs on the one hand and Mayer on the other, and certain facts are testified to on the part of the plaintiffs which, if true, would give rise to an inference that Mayer has at least mismanaged the affairs of the corporation and is seeking to conduct it to some extent to his own interest. It appears that Mayer has practically had the sole management of the affairs of the com-

pany since its organization, and plaintiffs assert that they are not satisfied with the results obtained during that period. If the charges and suspicions of the plaintiffs are groundless, we know of no more certain method of ascertaining the truth and exonerating Mayer than the method sought by this action. The fact that he bitterly opposes a thorough examination and inspection of the books would naturally tend to increase the suspicions which plaintiffs assert they already have.

After all has been said, the question is purely one of fact, as there seems to be very little ground for difference as to the law governing the rights of the parties.

The trial court heard the testimony, observed the witnesses and their manner of testifying, and we are not prepared to set his judgment aside, and it is therefore affirmed.