**Ada Lou Robert KING et vir, Appellants,**

v.

**A. G. SWANSON, Appellee.**

No. 3229.

Court of Civil Appeals of Texas.

Eastland.

June 8, 1956.

Rehearing Denied June 29, 1956.

Tom Davis, Adkins & Condron, Haskell, for appellants.

Childers & Childers, Abilene, Ratliff & Ratliff, Haskell, for appellee.

LONG, Justice.

On the 27th day of September, 1937, H. T. Carlile and wife executed an oil and gas lease to A. G. Swanson covering a tract of land in Stonewall County, Texas. On December 23, 1937, Swanson assigned the lease to F. B. Parriott. On March 10, 1938, Parriott assigned the lease to Stonewall Oil Company. On the 15th day of October, 1938, Stonewall Oil Company assigned to A. G. Swanson an undivided 1/16th of the 7/8ths working interest in the oil produced and sold from said land, until Swanson received $90,000. Thereafter, A. G. Swanson transferred to Carl S. Shoults a 1/3rd interest in said oil payment. Stonewall Oil Company assigned the lease to Jack B. Robert, who in turn assigned same to his daughter, Ada Lou Robert

King, who is the present owner of said lease. This suit was instituted by A. G. Swanson against Ada Lou Robert King and her husband, Frank J. King, for damages for failure to reasonably develop said lease and drill an offset well thereon and, also, sued for damages because Ada Lou Robert King had released to the landowner a portion of the acreage covered by said lease. A jury found in answer to special issues that Ada Lou Robert King should have drilled on the Carlile fee an offset to the Patterson well within a reasonable time after its completion, in September, 1951; that Ada Lou Robert King had not acted in good faith in failing to drill an offset well; that had Ada Lou Robert King drilled the offset well it would have produced oil; that $2,500 would compensate plaintiff for the damages sustained by him by the failure to drill such offset well; that Ada Lou Robert King should not have drilled an additional well on the Carlile fee other than one offset well and that Ada Lou Robert King had acted in good faith in failing to drill an additional well other than an offset well.

Before the case was submitted to the jury, by agreement of the parties, that portion of the suit wherein Swanson sued the Kings for damages for releasing 125 acres was withdrawn from the jury and submitted to the court.

Based upon the verdict, the court entered judgment in favor of A. G. Swanson against Ada Lou Robert King in the sum of $2,500 for failure to drill an offset well and decreed that Swanson recover nothing for the failure to drill additional wells on the land. The court further decreed that Swanson recover nothing on account of releasing a portion of the acreage. Ada Lou Robert King and her husband have appealed.

The evidence discloses that at the time Jack B. Robert acquired the Carlile lease there were two producing wells thereon; that Carlile well No. 1 was completed on July 28, 1938, for an initial production of 371 barrels at a depth of 5,176 feet. Carlile well No. 2 was completed on March

14, 1949, for a potential of 248 barrels of oil at a depth of 5,163 feet. The Carlile well No. 1 was plugged in May, 1949; the Carlile well No. 2 is still producing. The two Carlile wells had produced to the date of the trial 277,333 barrels of oil of a value of $238,083.97. At the time of the trial Swanson had been paid $12,250.19 on his $60,000 oil payment, leaving a balance of approximately $47,750. After Jack B. Robert acquired the Carlile lease an offset well was drilled on the Patterson tract which was completed in February, 1951. This well produced from February 1, 1951, through February, 1955, 51,362 barrels of oil of a value of approximately $150,000. There is evidence from Mr. Carl S. Shoults, a geologist and experienced oil man, who testified for the appellee that if a well were drilled on the Carlile fee offsetting the Patterson well that it would produce oil in paying quantities. It was his opinion that an offset well on the Carlile would be as good a well as the Patterson well. The oil and gas lease executed by the Carliles to Swanson contained the following provision, "In the event of production on adjoining land, lessee agrees to drill proper and necessary offsets along property lines. Lessor agrees that all other developments shall be at the discretion of the lessee." The assignment of the oil payment from Stonewall Oil Company to Swanson contained the following: —"it is the intent of the parties hereto that all decisions as to the management, the development and all the operations of said leases shall at all time be within the sole discretion of the undersigned assignor, its successors and assigns * * *." The case was tried upon the theory that before the appellee would be entitled to recover for the failure of appellants to drill an offset well, he must show that appellants acted in bad faith. The appellee plead it this way and it was so submitted to the jury without objection on his part.

 Appellant makes the contention that there is no evidence or, at least, the evidence is insufficient to sustain the finding that Ada Lou Robert King acted in bad faith in failing to drill an offset well. We have concluded that this point must be sustained. The evidence discloses that it was the opinion of appellee and his witness that the present well on the Carlile tract would not produce all of the recoverable oil therein. It was the opinion of the witnesses for appellant that such well would recover all the oil. During the time that Mrs. King owned the lease she had no part in its operation. Her father managed the lease for her from the time he gave it to her until her marriage. After her marriage her husband operated the lease. There was evidence that a well drilled to the pay zone on the Carlile would cost from $25,000 to $35,000. It was the opinion of witnesses for appellant that such a well would cost $50,000 to drill and equip. There was evidence that there were dry holes in the vicinity of the Carlile lease. There is evidence that Carlile No. 1 was plugged because it produced an excessive amount of water. The most that can be said of the evidence as to bad faith is that it would sustain a finding that Mrs. King exercised bad judgment in refusing to drill an offset well. Proof of bad judgment is not proof of bad faith. To prove bad faith some improper motive must be shown. We have carefully examined the record and have failed to find evidence sufficient to support the finding that Ada Lou Robert King, either acting alone or in connection with her husband and father, acted in bad faith in refusing to drill an offset well. There is no showing that they had any improper motive in refusing. There is no evidence that they bore any ill will toward Mr. Swanson. Something more than a mere mistake in judgment is necessary to establish bad faith. Bad faith is not imputable if honest intention or freedom of unworthy motives characterizes the exercise of discretion. There is no showing that appellant or those acting for her had any unworthy motive in failing to drill the offset well, or that they had acted dishonestly. See 5 Words and Phrases, Bad Faith, p. 7. Failure of appellant to drill an offset well did not of itself show bad faith. Such a failure affected her in the same way as it did appellee. Rush v. Kirk, 10 Cir., 127 F.2d 368.

In other words, if a profitable offset well had been drilled it would have inured to the benefit of appellants as well as the appellee. There is no showing that appellants or those acting for Mrs. King had any reason for failing to drill the offset well other than the bona fide belief that it would not be profitable. Reasonable minds might differ as to whether such a well would be profitable. Mr. King testified that he made extensive investigations as to the advisability of drilling such a well and concluded from such investigations that it would not be profitable. Mr. Robert, father of the appellant, gave similar testimony. Where a reasonable ground for refusal to drill the well is established, bad faith is not shown. It is undisputed that appellee owns a perpetual royalty interest in the Patterson well equal to the amount he owns in the Carlile under his oil payment up to $60,000. It will thus be seen that if the Patterson well is draining oil from the Carlile tract that appellee is getting the benefit of such drainage. Appellants own no interest in the Patterson tract and would not be benefited by any such drainage; but, on the contrary, would be sustaining a loss. An offset well which would prove profitable would benefit the appellants more than it would appellee. This being true, is strong evidence that appellant was acting in good faith in refusing to drill the offset well.

We have considered all other points of error presented by appellant and find no merit in any of them. They are, accordingly, overruled.

Appellee cross assigns error and contends the trial court erred in not rendering judgment for damages by reason of the release by appellant of a portion of the Carlile lease. The oil payment contract from Stonewall Oil Company to Mr. Swanson contained the following: " * * * providing, however, that before surrendering any oil and gas lease during the primary term thereof covering any part of the above described property the undersigned shall offer to assign to grantee any such lease at least sixty days prior to such contemplated surrender." On March 15, 1950, appellants executed a release to the landowners of 125 acres of said lease without offering to assign to Swanson. The original lease covering the Carlile tract was dated September 27, 1937, and was for a period of ten years from such date and as long thereafter as oil or gas is produced from said land in commercial quantities. It will thus be seen that the release about which complaint is made was executed two and a half years after the expiration of the primary term. Under the oil payment contract appellant had no duty after the expiration of the primary term to offer to assign to the grantee therein any part of the lease before it was surrendered. We hold that the expression "primary term" as used in the oil payment contract means that period of time in which the oil and gas lease might be kept alive by the payment of delay rentals without actual production. We are of the opinion that the trial court did not err in refusing a judgment against appellant for failing to offer to assign to Swanson. The judgment of the trial court, insofar as recovery is allowed against the appellant for damages for failure to drill an offset well on the Carlile tract, is reversed and that portion of the cause is remanded to the trial court. The judgment in all other respects is affirmed. Reversed and remanded in part and affirmed in part.