Keith S. PERRY, Appellant,

v.

PERRY BROTHERS, INC., Appellee.

No. 05–87–00603–CV.

Court of Appeals of Texas,
Dallas.

June 21, 1988.

Charles C. Frederiksen, Cynthia M. Jost, W. Alan Wright, Haynes & Boone, Dallas, for appellant.

James R. Cornelius, Jr., Mark E. Casburn, Zeleskey, Cornelius, Rogers, Hallmark & Borgfeld, Lufkin, for appellee.

Before HOWELL, LAGARDE and KINKEADE, JJ.

KINKEADE, Justice.

Keith Perry (Perry) appeals his take nothing judgment in a suit seeking injunctive relief to enforce his rights as a shareholder to inspect the corporate books and records of Perry Brothers, Inc. (Perry Brothers).

In four points of error, Perry claims the trial court erred in: 1) overruling his motion for directed verdict, motion to disregard jury findings, and for judgment notwithstanding the verdict because there is no evidence to support the jury's answers; 2) overruling his motion for new trial because there is insufficient evidence to support the jury's answers; 3) overruling his objections to defendant's exhibits, and 4) refusing to include his requested instructions in the charge to the jury. We disagree and affirm the judgment.

Perry filed suit against Perry Brothers, seeking injunctive relief to enforce his right to inspect the corporate books and records. Perry also sought recovery of reasonable attorneys' fees, costs, and expenses incurred in enforcing his rights under article 2.44 of the Texas Business Corporation Act. A temporary injunction hearing was held on September 12, 1986, and at its conclusion, the trial court granted a temporary injunction against Perry Brothers, requiring it to make certain books and records available to Perry on a monthly and semi-annual basis.

After a week of evidence the jury found that Perry Brothers had failed to permit Perry to inspect and make extracts of the relevant books and records of the corporation; however, the jury also found that Perry had improperly used information previously obtained, or that he made demand in bad faith or for an improper purpose resulting in the take nothing judgment. In point of error number one, Perry claims the trial court erred in overruling his motion for directed verdict, his motion to disregard a jury finding, and for judgment notwithstanding the verdict because there was no evidence to support the jury's answer to the second part of special issue number one of the jury charge. We disagree.

Special issue number one of the jury charge inquired:

Do you find that Perry Brothers, Inc., by and through its officers and/or directors, failed to permit Keith Perry to inspect and make extracts thereof the relevant books and records of account, minutes, and record of shareholders of the Corporation? Answer "yes" or "no" in Column 1. If "yes", do you find that Keith Perry has improperly used information previously obtained from other corporate records, or made demand for

such records in bad faith or for an improper purpose? Answer "yes" or "no" in Column 2.

|  | 1<br>failed | 2<br>improper/bad faith |
|---|---|---|
| ANSWER: | 1<br>Yes | 2<br>Yes |

In determining a no evidence point, we are to consider only the evidence and inferences which tend to support the findings of the jury and disregard all evidence and inferences to the contrary. *See Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985); *International Armament Corp. v. King*, 686 S.W.2d 595, 597 (Tex. 1985); *Stodghill v. Texas Employers Insurance Ass'n*, 582 S.W.2d 102, 103 (Tex. 1979); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *In re King's Estate*, 244 S.W.2d at 661–62.

■ A no evidence point of error must and may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Royal Indemnity v. Little Joe's Catfish Inn, Inc.*, 636 S.W.2d 530, 531 (Tex.App.—San Antonio 1982, no writ).

■ In concluding our review of the record, we note there was evidence to support the jury finding that Perry had improperly used previously obtained information or made demand in bad faith or for an improper purpose. Perry had previously filed, and then dismissed, a lawsuit to prevent the company from destroying records based on a Perry Brothers employee's conversation which he overheard. Perry made repetitious and disruptive inspections. Specifically, eleven requests were made from July 15, 1985, to April 11, 1986. Perry formed a group of "concerned stockholders" that made additional requests during the same period. Perry gave about seventy-five people one share of stock apiece. This required the company to spend additional money and labor transferring, preparing and mailing four quarterly dividend payments, totaling forty-five cents per share per year. Perry sent out misleading information to many shareholders that indicated the company was overdrawn by one and one-half million dollars. Perry never questioned Perry Brothers' management concerning the account balance, or inquired about having its cash management program explained, before he sent out the information. In reality, the account was never overdrawn; the discrepancy was merely a bookkeeping entry. Perry offered to sell his stock (8 to 8½% of the total outstanding stock) to the company for $30.00 per share as a way "to put an end to all these problems," even though he believed the book value of Perry Brothers' stock was around $20.00 and admits that 50,000 shares were acquired by the company for $7.70 six months earlier.

Perry requested and was unable to obtain information concerning the terms of a lease of office space from a company owned by the chairman of the board of Perry Brothers. Also, the terms of a lease of an airplane leased to Perry Brothers from the chairman's family was never made available to Perry until the time of trial.

In *Guaranty Old Line Life Co. v. McCallum*, 97 S.W.2d 966, 967 (Tex.Civ. App.—Dallas 1936, no writ), a corporate defendant alleged that a shareholder is acting in bad faith and comes into court with "unclean hands" when he attempts to destroy the corporation and injure the stockholders generally, and has made, and will continue to make, false statements which result in discord among the shareholders. This Court declared:

The stockholders must come into court with clean hands, and, if a state of facts exist sufficient to convince the court or jury that the stockholder is not seeking the information which might be revealed by the desired inspection, for the protection of his interest as a stockholder or that of the corporation, but that he is

actuated by corrupt or unlawful motives, the court will not aid him.

The above evidence supports the jury's answers; therefore, we overrule Perry's first point of error.

In point of error number two, Perry claims the trial court erred in overruling his motion for new trial because there was insufficient evidence to support the jury's answer to the second part of special issue number one of the jury charge.

Where the challenge to a jury finding is framed as an insufficient evidence point, we are to consider all the evidence in the case, both that in support of and that contrary to the finding, to determine if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). If the court so determines, the finding should be set aside and a new trial ordered. *Id.* In considering an insufficient evidence point, we must remain cognizant of the fact that it is for the jury, as the trier of fact, to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. *See Taylor v. Lewis*, 553 S.W.2d 153, 161 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). This Court may not substitute its judgment for that of the jury if the challenged finding is supported by some evidence of probative value and is not against the great weight and preponderance of the evidence. *See Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex. Civ.App.—Amarillo 1981, writ ref'd n.r.e.).

The record reveals the following evidence: Perry wanted specific details concerning some missing money, even though it was disclosed at a meeting of the shareholders that as a result of an audit, an employee resigned and made adequate restitution to the company. While Perry's information concerning the one-and-one-half million dollar overdraft was correct, it was taken from financial data intended only for internal corporate management. Balancing all the above evidence, we hold there was sufficient evidence to support

the jury's answer; therefore, we overrule Perry's second point of error.

In point of error number three, Perry claims the trial court erred in overruling his objections to admitting Perry Brothers' exhibits 6 and 6–2 and to the inference by counsel for Perry Brothers that a shareholder may not properly make repeated requests for documents. Perry further claims the trial court also erred in admitting, over Perry's objection, defendant's exhibits 24–4, 24–5, 24–7, 24–8, 24–10 through 24–13, 24–16 through 24–18, and 24–21 through 24–24.

Perry objected to the admission of defendant's exhibit number 6 (exhibit 6–2 is page 2 of exhibit 6), as being nothing more than a self-serving letter from Perry Brothers' counsel to Perry attempting to justify Perry Brothers' actions and is of no probative value. The letter responds to Perry's request to inspect several documents and merely sets forth in detail the company's policy to be followed by shareholders.

Finally, when Perry Brothers attempted to introduce several letters from other concerned stockholders (defense exhibits 24–3 through 24–24), Perry objected to their admission as "not having been a predicate laid for their admission. They don't appear to be addressed to this particular witness." The letters were from the concerned shareholders requesting documents for inspection. Although the letters were not addressed to the witness, the witness was the individual in charge of producing the records and a proper sponsoring witness of the exhibits; therefore a proper predicate was laid. The court correctly overruled all three objections; therefore, we overrule appellant's third point of error.

In point of error number four, Perry claims the trial court erred in refusing to include in the jury charge his requested instructions.

The following instruction was requested by Perry:

1. Under Texas law, the right of a stockholder to inspect books and records is not limited to one occasion. It may be

exercised at any reasonable time as long as the relation of stockholder exists; to ask to inspect documents twenty (20) days after the previous demand is not unreasonable. *Smith v. Trumbull Farmers Gin Co.*, 89 S.W.2d 829 (Tex. Civ.App.—Waco 1936, no writ).

2. Under Texas law, an unfriendly relationship between a corporation's management and a stockholder does not justify a denial of the stockholder's statutory right to inspect corporate books and records. *Moore v. Rock Creek Oil Corporation*, 59 S.W.2d 815 (Tex.Com.App. 1933).

3. Texas law permits shareholders to make copies of documents provided by the corporation for inspection. Tex.Bus. Corp. Act, Art. 2.44 B.

4. Under Texas law, written demand is not necessary for a stockholder to inspect corporate books and records. *Johnson Ranch Royalty Co. v. Hickey*, 31 S.W.2d 150, 152, (Tex.Civ.App.— Amarillo 1930, writ ref'd).

5. Under Texas law, a corporation cannot defeat a stockholder's right to inspect corporate books and records by offering him the corporation's financial statements or auditor's report. *Moore v. Rock Creek, supra.*

6. Under Texas law, a shareholder who is concerned that he will learn something alarming in the corporation's affairs has a proper purpose in seeking to inspect corporate books and records. *Id.*

■ These are statements of law. Only issues of fact are to be submitted to jury, and questions of law are for the court. *Hercules Exploration, Inc. v. Halliburton Co.*, 658 S.W.2d 716, 724–25 (Tex.App.— Corpus Christi 1983, writ ref'd n.r.e.); *Barton v. Davis*, 441 S.W.2d 299, 301 (Tex.Civ. App.—El Paso 1969, writ ref'd n.r.e.). The only function of a special explanatory instruction is to assist the jury in answering the issues and in this area the trial court has wide discretion. *Mobil Chemical v. Bell*, 517 S.W.2d 245 (Tex.1974). Rule 279 of the Rules of Civil Procedure only requires the trial court to submit controlling issues which are supported by the pleadings and evidence.

■ The test for whether the trial court abused its discretion is whether the court acted without reference to any guiding rules or principles, *i.e.*, whether the act was arbitrary or unreasonable, and the mere fact that the trial judge may decide the matter within his discretionary authority in a different manner than an appellate judge in similar circumstances does not demonstrate that an abuse of discretion has occurred. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–2 (Tex. 1985). The judge correctly overruled appellant's requested instruction because the instruction concerns questions of law to be decided by the judge, not the jury. Hence, we overrule appellant's final point of error and affirm the judgment.

HOWELL, Justice, dissenting.

I dissent. This case is controlled by *Moore v. Rock Creek Oil Corp.*, 59 S.W.2d 815, 818–19 (Tex.Comm'n.App.1933, holding approved).

Concerning the constitutional guaranty of free speech, it is conventional wisdom that a First Amendment which only protects the right to politely express non-controversial opinions, consistent both with the views of the audience and those holding the reins of government, would be an absolutely worthless guaranty of free speech. Likewise, a statute which only guarantees the right of inspection to shareholders who are friendly with, have confidence in, and have no desire to criticize the existing management of a corporation, would be a worthless inspection statute.

A minority shareholder has very few rights. By definition, those shareholders who, along with their allies, are in the majority, have sufficient votes to nullify the minority's right of franchise. In such instance, about the only thing left to a dissatisfied minority stockholder is his right to inspect, coupled with his right to denounce any matters disclosed by his inspection.

A suit to enforce the right of inspection is an equitable action and is to be governed

by the principles of equity. Although a jury is available in an equitable action to decide disputed fact issues, it is the function of the judge—not the jury—to decide the "expediency, necessity or propriety of equitable relief." *Alamo Title Co. v. San Antonio Bar Association*, 360 S.W.2d 814, 816 (Tex.Civ.App.—San Antonio 1962, writ ref'd n.r.e.).

There was ample evidence from which the jury could have found that plaintiff was unfriendly, untrusting, and downright hostile toward the company management. The jury had evidence from which it could have convicted him of being rude, unpleasant, and obstreperous. The jury also had available grounds to find that he was purposely making a nuisance of himself and that he had made rash accusations against the company management. In addition, the jury was free to conclude that plaintiff was motivated, in some part, by the desire to induce management to buy plaintiff's shares at a price well above book value and well in excess of the price which management had paid for the shares of another minority stockholder.[1]

Such matters, in combination, might, in some contexts, be a sufficient basis to label plaintiff's actions as falling within the highly elastic confines of the term, "bad faith." *But see King v. Swanson*, 291 S.W.2d 773, 775 (Tex.Civ.App.—Eastland 1956, no writ) (bad faith verdict reversed, insufficient evidence). *See also Ford v. Aetna Insurance Co.*, 394 S.W.2d 693, 698 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.) (bad faith claims insufficient to preclude summary judgment). However, the proceeding at hand is an equitable one, and the equities must be balanced. Taking all of the evidence against him in its worst light, plaintiff's insurgency and intransigency was not a sufficient ground to deprive him of that last vestige of shareholder democracy, provided by law for the protection of minority shareholders whose vote has been rendered meaningless, the right to inspect the books. *Moore*, 59 S.W. 2d at 818–19.

It is further to be pointed out that the court below has deprived plaintiff of this fundamental shareholder right in its entirety, presumably in perpetuity. Courts of equity must adjust the equities; they have both the power and the obligation to fashion their remedies to the necessities of the case. The court below could easily have placed limitations upon plaintiff's excesses without totally destroying his fundamental rights. The most that this evidence might have justified would have been an order from the trial court restricting the frequency and the extent of plaintiff's inspection activities. If warranted, specific misconduct on and about the company premises could have been enjoined. Instead, the trial court has elected to throw the baby out with the bath water.

I dissent; this case must be reversed and remanded for further proceedings not inconsistent with these views.

---

1. Book value is generally considered an unreliable indicator of the value of shares of stock, particularly in these inflationary times. Such valuation is comprised only of historical cost of a company's assets as progressively reduced by a rigid pre-ordained formula calculated to allow for wear, tear, and obsolescence. In fact, it is the very essence of entrepreneurship to utilize corporate assets in such a manner that the value of the whole comes to exceed the sum of the parts. The vogue term for this phenomenon is "synergism."

With respect to the valuation of shares by comparing to other sales, the method is quite acceptable if the shares have an established public market. With respect to closely held shares, about the only market to be found by a minority holder is with the company management; he often has but two alternatives—accept the amount offered by management or continue to hold. After all, who would be interested in buying minority shares unless he had complete confidence in the synergistic abilities of an entrenched management? The fact that defendant management has been buying shares at a substantial discount from book value is somewhat of an indicator that this minority shareholder might have had reason to desire a look at the books.