**Opinion issued July 12, 2012**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-00501-CV

_____

**JEFF BAKER, Appellant**

**V.**

**LEROY E. SKAINS, Appellee**

---

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Case No. 2009-34577**

---

## MEMORANDUM OPINION

On April 18, 2009, plaintiff-appellant Jeff Baker and defendant-appellee Leroy E. Skains were in an automobile accident in which Skains struck Baker's vehicle from behind. Baker sued Skains and, before trial, Skains stipulated to his

negligence and that the accident was the proximate cause of Baker's injuries. The parties also settled Baker's claim for damages to his vehicle, leaving unresolved for trial only the issues of past loss of earning capacity, medical expenses, and physical pain and mental anguish. Baker complains that the jury's award was too low because it failed to award him past lost wages.[1] We affirm.

## TRIAL TESTIMONY AND EXHIBITS

Baker was the only witness to testify at trial. He testified to going to work for James-TIMEC in 1999 after graduating from high school. He started as a "general technician," and worked his way up to "inert technician"—the position he had at the time of the accident. This position is physically demanding and requires the ability to lift and carry up to sixty pounds unassisted. Baker testified that before the accident, in ten years of work with TIMEC, he never missed a day of work for injury. Before the accident, his career with TIMEC was "continuing to move forward." As of April 2009, his intention was "to continue working with TIMEC."

---

[1] The jury charge in this case asked for a finding of past "loss of earning capacity." The parties' briefing uses that phrase and "lost wage claim" interchangeably. While we note that these concepts are technically different, those differences are not relevant to our analysis in this case. *E.g., Strauss v. Continental Airlines, Inc.*, 67 S.W.3d 428, 435 & n.2 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (distinguishing between "past loss earnings," i.e., "the actual loss of income due to an inability to perform a specific job a party held from the time of injury to the date of trial," and "loss of earning capacity," i.e., "the ability and fitness to work in gainful employment for any type of remuneration.")

Baker described being rear-ended by Skains when traffic abruptly came to a stop on the freeway. He rode by ambulance to the hospital because he felt some pain in his neck and back after the accident. X-rays were taken and Baker was sent home with some anti-inflammatory medicine. When he woke up the next morning and was still in pain, he called TIMEC and explained that he would not be able to come to work. Because his pain took longer than he expected to get better, on May 6 he sought treatment at HealthRite Medical and Rehab, a physical therapy facility that was recommended by a friend. HealthRite would not treat him without a physician's order, so it referred Baker to Dr. Kahn. Dr. Kahn referred him back to HealthRite. He received therapy at HealthRite several times a week from May 8, 2009 through July 14, 2009. Baker's medical bills for the emergency room, his one visit to Dr. Kahn, and his multiple visits to HealthRite totaled $4,802.30 and were admitted at trial as evidence of his past medical expenses.

Baker kept TIMEC apprised of his situation while he was undergoing therapy. He saw Dr. Kahn again at the conclusion of his HealthRite therapy, but she did not clear him to return to work. Although TIMEC had been supportive, at some point Baker started hearing from co-workers that TIMEC was interviewing others for his position since he was not available for projects. Baker felt he could safely return to work at TIMEC in September 2009, but by then TIMEC had

3

replaced him. In November, TIMEC brought him on for a project, but as a general technician at a lower pay rate.

Baker testified that, in April 2009, his rate of pay was "around $24 an hour," and he earned $24,143 between January and March 2009. Although he did not recall his hourly rate when he returned to work in November, he testified that he earned a total of $4,123 from November 2009 through the end of that year.[2]

Baker also testified to approximately $40,000 in lost past wages as a result of the accident.

> Q.　Have you had a chance to do some calculations in support of your theory as to what you lost in the way of wages?
>
> A.　Yes sir.
>
> Q.　Okay. And can you give us those calculations?
>
> A.　The way the job works — the way the job — the nature of the industry, it's really heavy all the other months. So, the other months I was making, like — I would probably make, like, 20,000 a year [sic]. In the third quarter, I would probably make about 10 to $12,000 a year [sic].
>
> So me being out from April and not going back to work until, you know, end of November, I probably missed out on $40,000 plus.
>
> Q.　All right. And you're basing that on, then, beginning with the money you had made through March of '09; is that correct?
>
> A.　Yes, sir.
>
> Q.　Okay. And it's your testimony essentially the remaining three quarters of the year were impacted either by the injury or the

---

[2]　Baker testified to these amounts after refreshing his recollection with paycheck stubs that were not shown to the jury or admitted as evidence.

absenteeism that brought about your position being filled; is that correct?

A.     Yes, sir, because once a project starts, they have, like — they already have the people on the project. The top people are already determined at the beginning of when the project starts. So if you miss the boat at the beginning and you don't make it on the — you know, in your position — if they don't have a position available for you that you do there, by the time the ship rolls, you're pretty much — you're not going to be able to get on unless you go and take a lower position or you get downgraded somewhere.

But they — I wasn't able to go back to work — I went back to work at the end of November because that's when the next project became available, because there were — I mean, just because I felt better in September, the project had left out two months before. So, I mean, I missed it. There was no way I could get in on it. There was no way I could go to work then until the next project became available.

Q.     All right. First quarter, then — I'm going to do a little math — $24,000.

A.     Yes, sir.

Q.     January through March. If we were to consider each of these four quarters, had you continued through '09, multiplying the remaining three times the 24, that's going to be 72.

But you're saying that not all quarters are the same; is that correct?

A.     No, sir. The third quarter is lower, generally lower.

Q.     Okay. So that 72,000-dollar value as a result of that slow third quarter — your testimony is – is more accurately valued at — or would bring your yearly total closer to 40,000; is that correct?

A.     Yes, sir.

Q.     So do you stand, then, behind that math – if we've got the 24 on your pay stub and essentially you missed everything else about '09 —

5

A. Yes, sir.

Q. — because of the injury and the absenteeism, if we multiply the 24 by three, that's 72. However, slow third quarter means rather than 72 — we're backing 32 out. And your testimony is your lost wages, going through the end of '09, would be right at 40 grand; is that right?

A. At least.

Q. Okay. And does that calculation meet with the approval of TIMEC, to your knowledge?

A. Yes, sir. This is what the — this is what my human resource department would come up. This is the same figure they would come up with.

Skains's counsel did not question him about these estimated lost wages.

While cross-examining Baker, Skains's counsel offered into evidence Defendant's Exhibit 1, a two-page form from Baker's TIMEC employment file, but never asked Baker any specific questions about the exhibit. It was admitted with no objection from Baker. Defendant's Exhibit 1 is entitled "Employee Status Change Form" and dated April 12, 2009—six days before the accident. Under the "Transfer, Leave of Absence (LOA), Separation Actions" heading, it indicated a change in status of "Involuntary Separation" with the reason designated as "ROF."

## CLOSING ARGUMENTS

Baker's counsel during closing argument asked the jury to award $4,802.30 in past medical expenses and $40,000 in past lost wages, emphasizing that those amounts were "clearly . . . established, without any rebutting testimony."

6

Skains's counsel responded by arguing that the jury could make its decision based not only on the evidence it had, but also "based upon what you don't have." Relevant to lost wages, he asked the jury to award zero damages for past lost wages because Defendant's Exhibit 1 clearly indicated that Baker did not work for TIMEC when the accident happened. Specifically, he argued, TIMEC's "own records show that he was released one week before this accident happened, and that's the evidence." Skains's counsel pointed to the lack of tax returns or pay stubs in evidence to bolster Baker's testimony as to his lost wages and urged the jury to look not to look only at Baker's testimony, but to the "hard evidence" on paper.

In rebuttal, Baker's counsel argued that the reduction-in-force status did not mean that Baker had lost his job, but only reflected the on-and-off nature of the TIMEC projects. He urged the jury to look at Baker's record of working for TIMEC for ten years, as well as his testimony about his lost wages of $40,000, and award lost earning capacity accordingly.

### VERDICT AND JUDGMENT

The jury awarded $2,500 for physical pain and mental anguish, $4,802.30 for medical care expenses, and $0 for loss of past earning capacity. The court entered judgment on that verdict, and awarded to Baker court costs, as well as pre-judgment and post-judgment interest. Baker filed a motion for judgment

notwithstanding the verdict and, alternatively, motion for new trial. In that motion, Baker argued that (1) at least $40,000 in lost wages was conclusively proven by Baker's unrebutted testimony, (2) a letter from a TIMEC administrator estimating Baker's lost wages at $45,987—which was excluded from evidence—bolsters the argument that Baker's reduction in force was not a termination, and (3) it was improper for Skains's lawyer to argue to the jury that "reduction in force" meant laid off or terminated when he knew that not to be true. Baker also attached to his motion an email from TIMEC, dated post-trial, explaining that "reduction in force" does not mean terminated, but instead indicates that an employee has come off a project. In support of his request for a new trial, he argued that this letter from TIMEC was "newly acquired specifically because it was suggested to the jury by Defense Counsel such evidence would not and could not exist." The trial court denied this motion, and Baker timely appealed.

## ISSUES ON APPEAL

Baker brings forth two issues on appeal.

(1) "Did Appellant set the proper predicate for a legal sufficiency challenge?"

(2) "Did the jury substitute compound inferences for a vital fact for which no evidence exists or for which contradictory evidence exists?"

Baker requests that the Court "reform the trial court's verdict to include Jeff Baker's proper claim for lost wages in the amount of $40,000.00." Alternatively,

8

Baker requests that "the case be remanded for further proceedings allowing the Appellant the opportunity to perfect his evidence so that the trier of fact may have a full and fair opportunity to evaluate the merits of the Appellant's claim for lost wages."

Skains asks us to affirm the trial court's judgment and presents six arguments in support:

(1)     "An appellate court may not consider matters that are not part of the record on appeal. Should this Court refuse to consider and strike from Baker's brief all matters, information, and statements of purported fact that are outside the record and unsupported by any cited evidence presented at trial?"

(2)     "An appellate court may not consider documents attached to an appellate brief that do not appear in the record. Should this Court refuse to consider and strike from Baker's brief an attached e-mail because it is completely absent from the record?"

(3)     "Should this Court affirm the trial court's judgment where Baker has not adequately briefed any issues on appeal that the jury's decision to award him $0 for past loss of earning capacity were factually and legally insufficient?"

(4)     "Was the jury's decision to award Baker $0 for past loss of earning capacity legally sufficient where probative evidence in the record supports the decision and the evidence does not conclusively establish as a matter of law that he would have earned $40,000 after the accident and prior to trial?"

(5)     "Was the jury's decision to award Baker $0 for past loss of earning capacity factually sufficient where unrebutted evidence showed that he was not employed at the time of the accident?"

(6)     "Is Baker's argument that the jury impermissibly stacked inferences a red herring, distracting attention from the real

9

issues of legal and factual sufficiency, where a jury's failure to find a fact essential to a plaintiff's recovery need not be supported by affirmative evidence?"

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Baker asserts that he adequately preserved his sufficiency challenges. We agree. Legal sufficiency challenges can be preserved in "(1) a motion for instructed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue or (5) a motion for new trial." *Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991) (citing *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985)). "A point in a motion for new trial is a prerequisite to complain on appeal that the evidence is factually insufficient to support a jury finding and that a jury finding is against the overwhelming weight of the evidence." *Id.* at 511 (citing TEX. R. CIV. P. 324(b)(2), (3); TEX. R. APP. P. 52(d)).

In his combination motion for judgment notwithstanding the verdict and motion for new trial, Baker argued that, contrary to the jury's finding, he had conclusively proven past lost wages of approximately $40,000. He asked that these lost wage amounts be made a part of the judgment or, alternatively, that the trial court grant him a new trial.

10

In his second issue statement, Baker argues that Skains's closing argument improperly urged the jury to "establish a vital fact through compound inferences for which no evidence exists or for which contradictory evidence exists." In the argument section of his brief, Baker contends that the jury's finding of no lost wages is contrary to the only unrebutted testimony establishing the opposite. We interpret this issue statement and argument, taken together, to adequately challenge the sufficiency of the evidence supporting the jury's award of $0 in past lost wages.[3]

## A. Standard of Review

Because Baker "attacks the legal and factual sufficiency of an adverse jury finding on which []he had the burden of proof, []he must demonstrate that the evidence conclusively establishes, as a matter of law, all facts in support of the issue (for rendition), or, alternatively, that the jury's adverse finding is against the great weight and preponderance of the evidence (for remand)." *Jordan v. Sava, Inc.*, 222 S.W.3d 840, 853 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing

---

[3] Skains argues that Baker has not adequately briefed here a challenge to the legal or factual sufficiency of the evidence to support the jury's failure to award damages for lost wages. We disagree. "The statement of an issue or point will be treated as covering every subsidiary question that is fairly included." TEX. R. APP. P. 38.1(f). To determine if an issue is properly raised, we look not to the issue statements in isolation, but also to the substance of the brief's argument section. *See Perry v. Cohen*, 272 S.W.3d 585, 587–88 (Tex. 2008). "Appellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver." *Id.* at 587. We should reach the merits of an appeal whenever reasonably possible and should construe issues presented liberally to obtain a just, fair, and equitable adjudication of the rights of the litigants. *Id.* at 587–88.

*Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Harris County v. Vernagallo*, 181 S.W.3d 17, 29 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).

In reviewing a "matter of law" argument, we first review the record for evidence that supports the finding, while ignoring all evidence to the contrary unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). If there is no evidence to support the finding, then we examine the entire record to determine whether the contrary proposition is established as a matter of law. *Dow Chem. Co.*, 46 S.W.3d at 241. We will sustain a challenge to the jury's finding only if the appellant conclusively establishes the contrary proposition. *Id*.

In reviewing a claim that the verdict is against the great weight and preponderance of the evidence, we consider and weigh all of the evidence and may set aside the verdict only if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain*, 709 S.W.2d at 176. The jury may believe one witness and disbelieve another, and it may resolve inconsistencies in any testimony. *Eberle v. Adams*, 73 S.W.3d 322, 327 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

**B. Analysis**

Before applying the applicable standard of review to the evidence, we must first address Skains's arguments that we cannot consider all the evidence Baker relies upon in his brief. Specifically, Skains argues that—in conducting a sufficiency review—we should not consider facts discussed in Baker's brief that are not part of the record on appeal. Relatedly, he argues that we should not consider documents attached to Baker's brief that are not part of the record. We agree.

With limited exceptions that are not material here, an appellate court may not consider matters outside the appellate record. *Siefkas v. Siefkas*, 902 S.W.2d 72, 74 (Tex. App.—El Paso 1995, no writ) (citing *Sabine Offshore Serv. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979)). "Documents not introduced into evidence at trial are not properly included in the record and cannot be considered on appeal." *Vanscot Concrete Co. v. Bailey*, 862 S.W.2d 781, 783 (Tex. App.—Fort Worth 1993), *aff'd*, 894 S.W.2d 757 (Tex. 1995). The attachment of documents as exhibits or appendices to briefs is not formal inclusion in the record on appeal and, thus, the documents cannot be considered. *See, e.g.*, *Samara v. Samara*, 52 S.W.3d 455, 456 n. 1 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *Till v. Thomas*, 10 S.W.3d 730, 733–34 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

Baker's brief refers to "successfully excluded documents (Andy Staub's wage loss opinion letter and Baker's end of year check stub—attached) that were directly on point and contrary to the inferences and indictments [Skains's counsel] urged the jury adopt." This is a reference to an email, written by Andrew W. Staub, TIMEC's HR Manager, "indicating the amount of potential earnings [Baker] may have lost as a result of his automobile accident in April 2009" is "$45,987." Staub noted that his opinion was calculated with reference to Baker's earnings reflected on certain pay check stubs for 2009 and based on Baker's representation to him that "he was unable to work because of the accident between April 2009 and late in the year."

As Baker acknowledges, Staub's email and the attached pay check stubs were excluded from evidence and, thus, were not before the jury. He does not ask us to hold that the exclusion of this evidence was improper. Also attached to Baker's brief is a post-trial letter from TIMEC explaining that release from a project through a "reduction in force" does not mean terminated from employment, but, rather, released from on-and-off projects. This letter was likewise not in evidence at trial.

Because this evidence discussed in, and attached to, Baker's brief was not before the jury, we may not consider it in our review of the sufficiency of the evidence.

We begin our legal sufficiency review by reviewing the record for evidence that supports the jury's failure to award Baker's lost wages, while ignoring all evidence to the contrary unless a reasonable fact-finder could not. *City of Keller*, 168 S.W.3d at 827. Skains argues that because "probative evidence in the record supports the jury's decision to award Baker $0, Baker's legal sufficiency challenge must fail." In support, he contends that the jury had evidence before it that Baker no longer worked for TIMEC at the time of the accident, and that "[d]ocumenting this termination was an 'Employee Status Change Form' that was admitted into evidence showing that Baker suffered an 'involuntary' separation action from TIMEC due to a reduction of force on April 12, 2009—almost a week before the April 18, 2009 accident." Baker argues that it is not a fair inference from his reduction in force status on April 12, 2009 that the 'lay off' extended not only through the <u>entire time</u> Baker was either injured, convalescing or otherwise not yet approved to return to work, but all of 2009."

Given that there was no testimony about the context of the April 12, 2009 Employee Status Change Form, we assume, for purposes of Baker's sufficiency challenge, that it is not probative evidence of his employment status throughout the entire relevant time period. But, to prevail, Baker must establish not only that the April 12, 2009 TIMEC document is not evidence in support of the jury's failure to award lost wages, but must also demonstrate that the trial evidence conclusively

15

established that he suffered lost wages of $40,000. *Dow Chem. Co.*, 46 S.W.3d at 241. We agree with Skains that Baker has not done so.

Even if we accept Baker's proffered explanation of Defendant's Exhibit 1, that exhibit demonstrated that, at the time of the accident, Baker was not actively working on a TIMEC project. He had been "involuntarily separated" on April 12, 2009, six days earlier. According to Baker, he was ready to return to work in September but, because the projects at that time were already staffed, TIMEC could not offer him work until November, and even then they only let him work a lower-skilled job for less pay for a brief period of time.

Baker did not explain any specific projects he missed working on, testifying instead that he "was missing out on some projects . . . missing out on a couple of things and some money and they were, you know, just trying to see how I was doing and when I was going to be back to work." He did not explain why, when he returned to work in November as a general technician, TIMEC only allowed him to work "for a short period of time." No TIMEC payroll documents were introduced by Baker, and no one from TIMEC testified. While Baker's testimony that he "missed out on $40,000 plus" was not controverted and is some evidence of his lost wages, it is not conclusive proof such that we must hold that the jury could not have found otherwise.

16

"The trier of fact assesses the credibility of the witnesses and the weight to be given their testimony, and can accept all, part, or none of the testimony or may make its own deductions from the evidence." *See Aloe Ltd., Inc. v. Koch*, 733 S.W.2d 364, 367 (Tex. App.—Corpus Christi 1987, no writ). The jury, as the trier of fact, has the responsibility to judge the witnesses' credibility, assign weight to their testimony, and to resolve any inconsistencies. *Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Perry v. Perry Bros., Inc.*, 753 S.W.2d 773, 776 (Tex. App.—Dallas 1988, no writ).

"The jury may disbelieve an interested witness even if uncontradicted." *McGuffin v. Terrell*, 732 S.W.2d 425, 428 (Tex. App.—Fort Worth 1987, no writ); *Hebert v. Pan Am. Van Lines, Inc.*, 681 S.W.2d 221, 222 (Tex. App.—Houston [14th Dist.] 1984, no writ) ("In fact, the jurors may disbelieve a witness, though he is neither impeached nor contradicted."). Because the jury was free to disbelieve some or all of Baker's lost wage testimony, we cannot conclude that Baker conclusively demonstrated he lost $40,000 in earning capacity as a result of the accident. The jury's award of $0 damages is thus supported by legally sufficient evidence.

We likewise hold that the jury's finding of $0 damages is supported by factually sufficient evidence. In considering a challenge that the verdict is against the great weight and preponderance of the evidence, we must weigh all the

17

evidence; we will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain*, 709 S.W.2d at 176. The jury's findings are entitled to great deference and will not be reversed unless the record indicates the jury was influenced by passion, prejudice, improper motive, or something other than conscientious conviction. *Herbert v. Herbert*, 754 S.W.2d 141, 143 (Tex. 1988). A jury's failure to find a fact need not be supported by affirmative evidence, but the jury cannot refuse to find a fact in the face of overwhelming evidence of the existence of the fact. *Russell v. Hankerson*, 771 S.W.2d 650, 653 (Tex. App.—Corpus Christi 1989, writ denied). We cannot substitute our judgment for the jury's merely because we would have weighed the evidence differently or reached another conclusion. *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

The jury was presented with evidence that Baker was laid off shortly before the accident. Baker testified that he missed out on projects and about $40,000 in wages, but this testimony was not very specific and was not supported by TIMEC documents or testimony. Nothing in the record indicates the jury was influenced by passion, prejudice, improper motive, or something other than conscientious conviction. We cannot say that there was "overwhelming evidence" that Baker

18

suffered $40,000 in lost earning capacity.  The jury's award of $0 is not against the great weight and preponderance of the evidence.

Because the jury's failure to award loss of earning capacity is supported by legally and factually sufficient evidence, we overrule Baker's second issue.

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.